FRANK KEANE *v.* STATE OF MARYLAND.

[No. 9, April Term, 1933.]

*Decided May 25th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Leon A. Rubenstein,* for the appellant.

*G. C. A. Anderson, Assistant Attorney General,* and *J. Bernard Wells, Deputy State's Attorney for Baltimore City,* with whom were *William Preston Lane, Jr., Attorney General,* and *Herbert R. O'Conor, State's Attorney,* on the brief, for the State.

OFFUTT, J., delivered the opinion of the Court.

Frank Keane was on March 26th, 1929, indicted in the Criminal Court of Baltimore City for robbery with a deadly weapon, and later on that charge tried, convicted, and sentenced to a term of ten years in the Maryland penitentiary. On June 13th, 1932, over three years after he was sentenced, he filed in the same court a petition for a writ of *coram nobis* on the ground (1) that the prosecuting witness, the only person who at the trial identified him as the person who committed the crime charged in the indictment, subse-

quently admitted that he had been mistaken in his identification, and (2) that two other persons present when that crime was committed, although the petitioner was exhibited to them, failed to identify him, but that that fact was not presented to the jury which tried him, and that, in consequence, although innocent of the crime with which he was charged, he was, through the mistaken identification of the prosecuting witness and the failure of the State to call the other two eyewitnesses who were unable to identify him, convicted thereof. He accordingly asked the court to grant the writ and review the facts of the case. Supporting affidavits were filed in connection with the petition, and on November 5th, 1932, the court, in an elaborate and interesting review of the history and functions of the writ and its relation to the relief prayed, decided that it afforded no relief against such a mistake of fact as that alleged in the petition, and accordingly dismissed it. The appeal is from that order.

From the pleadings and affidavits it appears that on March 16th, 1929, two men armed with pistols entered a branch store of the Crook's Stores on Clifton Avenue in the City of Baltimore and robbed Herman Bradley, the manager, of $368. There were present at the time two clerks, William E. Jackson and John William Hook. Subsequently Keane was arrested and charged with the crime. At the ensuing trial Bradley positively identified him as one of the two men who had robbed him, but neither of the two clerks was called, and, as stated above, Keane was convicted and sentenced.

In June, 1930, Keane interested Theodore H. Dorsey, who had preached at the penitentiary where Keane was confined, and he (Dorsey) interviewed Bradley and asked him if "he was absolutely certain that he had picked the right man." At first Bradley was indignant that there should be any question about his testimony, but later stated that he had become convinced of his error in identifying Keane, "mainly as a result of having seen in a daily newspaper pictures of two other men, Rawlings Whittemore and a certain Minnor, also charged with robbery; that he showed the

pictures to the two clerks, Hook and Jackson, and he and they recognized them as pictures of the two men who had robbed Bradley; that Bradley was afraid to bring this information to the attention of the "authorities", because he feared he would lose his position. Subsequently Bradley informed the state's attorney's office of his alleged error, and he was then summoned to the Maryland penitentiary and shown prisoners who were lined up for identification. In the line were Rawlings Whittemore, whose picture he had seen, and Keane. He identified Keane, not as having been present at the robbery, but because he had seen him before, but failed at the time to recognize Whittemore.

It is also alleged that before the trial the two clerks informed the State through its prosecuting officers that they were unable to identify the robbers, because they were so frightened that they could not remember their faces. But in their affidavits filed with the petition they said they had seen the robbers, had had a good look at their faces, that one of them made the two clerks hold up their hands while the robbery occurred and until the robbers left the store. Jackson said that he did not think Keane was present, and Hook said that, when he was taken to a "police line up," he was unable to identify any one in it as Keane.

There was filed in the case by the State what is called an "agreed statement of facts," but, as it appears to have been "agreed" to only by the deputy state's attorney, it has no probative force, except as an affidavit.

From what has been said it is apparent that the purpose of this proceeding was to have the Criminal Court of Baltimore City reverse a judgment entered over three years before the petition was filed, (1) because a witness who did testify in the case gave false testimony which he mistakenly believed to be true, and (2) because two other persons present when the crime was committed, and who had a "good look" at the robbers, were not called by the State, when, if called, one would have said that he did not "think" Keane was one of the robbers, and the other might have said the same thing.

To effect that purpose, the appellant asked the court to issue a writ of error *coram nobis,* on the theory that under such a writ it could review the evidence given before the trial jury on the issues then in the case, and affirm or reverse the judgment therein, accordingly as it found that the evidence adduced in connection with the petition indicated that the evidence before the trial jury was true or false.

But an examination of the history and origin of the writ demonstrates that it cannot be invoked for any such purpose. The writ itself was a common law writ which in England issued out of the Court of Chancery to the Court of King's Bench, in which case, because of the fiction of the King's presence, it was called a writ of error *coram nobis,* or to the Common Pleas, when it was called a writ of error *coram vobis,* for the purpose of correcting error of fact. Its efficacy and usefulness in this country have in some states been destroyed by statute, and in all to some extent modified by statute or practice, but where applicable it applies to criminal as well as to civil cases. In the original as well as in the modern practice, its purpose was not to permit a review of the evidence given in connection with the issues actually tried, to determine whether witnesses who actually testified before a jury sworn on those issues testified falsely, but to determine whether facts existed which were not known to the court at the trial and not in issue under the pleadings, but which, if known, would have prevented the judgment which actually was entered from being entered. And that must necessarily have been so, for if the effect of the writ was to permit the court in which the judgment was entered to decide whether the witnesses in the case had testified falsely, and, if it decided that they had, to reverse it, instead of being the end of the litigation, the judgment might well be but the beginning of it.

In speaking of its purpose, Stephen, in his work on *Pleading,* says: "So if a matter of fact should exist which was not brought into issue, but which, if brought into issue, would have led to a different judgment, the existence of such

fact does not, after judgment, amount to error in the proceedings. For example, if the defendant has a release, but does not plead it in bar, its existence cannot, after judgment, on the ground of error or otherwise, in any manner be brought forward. But there are certain facts which affect the validity and regularity of the legal proceeding itself; such as the defendant having appeared in the suit while under age by attorney and not by guardian; or the plaintiff or defendant having been a married woman when the suit was commenced. Such facts as these, however late discovered and alleged, are errors in fact and sufficient to reverse the judgment upon writ of error." *Andrews' Stephen's Pleading*, 203.

And in *Black on Judgments*, sec. 300, it is said: "But if the court was fully informed of and rightly apprehended the facts in the case, its error in applying the law to such facts is not such an error as could be rectified in this proceeding. Nor will this writ lie to contradict or put in issue any fact that has been already adjudicated in the action. Thus, if the record states that the defendant appeared and confessed judgment, he cannot controvert that fact after the expiration of the term for the purpose of setting aside the judgment."

This court appears to have considered the scope and purpose of the writ for the first time in this state in *Hawkins v. Bowie*, 9 G. & J. 437, cited in *Kemp v. Cook*, 18 Md. 130, where the court said: " 'Since the case of *Hawkins v. Bowie*, 9 G. & J. 437, there ought to be no doubt in Maryland, that a writ of error *coram nobis* lies to correct an error in fact, in the same court where the record is. If there be error in the process, or through default of the clerk, it shall be reversed in the same court by writ of error thereon before the same judge.' *Bridendolph v. Zellers*, 3 Md. 333. The office and application of this writ is thus described in *Saunders' Reports*: 'So a writ of error may be brought in the same court for an error in fact; thus, where an erroneous judgment is given in matter of fact only, and not in point of law, in the King's Bench, it may be reversed in the same

court by writ of error, which is sometimes called error *coram vobis,* but more correctly *coram nobis,* * * * as where the defendant being under age appeared by attorney or the plaintiff or defendant was a married woman at the time of commencing the suit, or died before verdict or interlocutory judgment.' *Jacques v. Cesar,* 2 Saunders, 101, a, note 1; also 2 *Tidd's Prac.,* 1191, to same effect." Those cases are cited with approval in *Hawks v. State,* 162 Md. 30, 157 A. 900, 901, where Judge Pattison for this court said: "The writ of error *coram nobis* is an old common-law writ recognized in this state. Its functions differ from an ordinary writ of error in that the latter raises questions of law, while it deals only with facts, which, if known at the time the judgment was rendered, would have prohibited its rendition. It is also unlike a writ of error, as it is addressed to the court which rendered the judgment, while a writ of error is addressed to some other and superior court. *Hawkins v. Bowie,* 9 G. & J. 428; *Bridendolph v. Zellers' Excrs.,* 3 Md. 325; *Kemp v. Cook,* 18 Md. 130; *Emersonian Apartments v. Taylor,* 132 Md. 209, 103 A. 423; 2 *R. C. L.,* page 307, par. 262; 2 *Poe, Pl. & Pr.,* page 778, par. 818." Many cases illustrating the application of those principles to varying facts are collected in a note to *Fugate v. State,* 3 Ann. Cas. 328; 2 *R. C. L. "Appeal & Error,"* secs. 259-262; *Standard Encyc. Proc.,* 601 etc.; *Tidd's Prac.* (3rd Amer. Ed., 9th London Ed.), p. 1136; 34 *C. J.* 390 *et seq.;* 16 *C. J.* 1326; 10 *A. L. R.* 648; 30 *A. L. R.* 686; 36 *A. L. R.* 1443; 18 *L. R. A.* 842.

The decisions both in America and England are uniform in holding that the writ lies only to the trial court to correct its own errors of fact, but there is no such uniformity in the case law of this country as to what errors of fact may be corrected under its authority. Where applicable at all, there is little dissent from the proposiiton that it lies to obtain relief from such errors of fact as the infancy, death, or coverture of the defendant, in cases where those defenses, if known at the time, would have prevented a judgment, but which through no fault of the defendant were not known

when the judgment was entered. *Sanders v. State,* 85 Ind. 324. Such facts would rarely affect the proceedings in a criminal prosecution; consequently the writ is less frequently available in such cases than in civil cases, and there is less uniformity in the decisions as to what errors of fact will justify its use in criminal prosecutions. But it has been generally held that, where the writ is available, it lies to reverse a judgment obtained by fraud, coercion, or duress, as where a plea of guilty was procured by force, violence, or intimidation, or where at the time of the trial the defendant was insane, when such facts were unknown to the court when the judgment was entered (16 *C. J.* 1326), or where the accused was prevented by fraud, force, or fear from presenting defensive facts which could have been used at his trial, when such facts were not known to the court when the judgment was entered. *Ibid.;* 30 *A. L. R.* 686. By the decided weight of authority, however, the remedy is not broad enough to reach every case in which there has been an erroneous or unjust judgment, on the sole ground that no other remedy exists, but it must be confined to cases in which the supposed error inheres in facts not actually in issue under the pleadings at the trial, and unknown to the court when the judgment was entered, but which, if known, would have prevented the judgment. Accordingly it is stated as a general rule that "the writ of error *coram nobis* does not lie to correct an issue of fact which has been adjudicated, even though wrongly determined; nor for alleged false testimony at the trial; nor on the ground that a juror swore falsely as to his qualification; nor for newly discovered evidence. Further, it is not available when the facts complained of were known before the trial, and where advantage could have been taken of the alleged error at the trial." 16 *C. J.* 1327. There are cases in conflict with that statement, as *Davis v. State,* 200 Ind. 88, 161 N. E. 375, 382, which goes to the extent of holding that the writ lies to correct such an error of fact as the false testimony of a witness at the trial of the case in which the judgment was entered. But that conclusion is opposed to the great weight of author-

ity, and is wholly inconsistent with the origin and historical development of the remedy. Indeed no case supporting it is cited in the opinion, and the court announces that "we do not undertake hereby to lay down a general rule of law that a writ of error *coram nobis* should be granted whenever a material witness recants and admits perjury, but in the sound discretion of the court, where, as here, it appears that the verdict most probably would not have been rendered except for such testimony and that there is a strong probability of a miscarriage of justice unless the writ is granted, it should be granted." Cases supporting the view that the writ is not available to correct such errors of fact as the perjured testimony of a material witness or to relitigate an adjudicated fact, are *Asbell v. State,* 62 Kan. 269, 61 P. 690, 692; *Coppock v. Reed,* 189 Iowa, 581, 178 N. W. 382; *Wilson v. State,* 46 Wash. 416, 90 P. 257; *State v. Superior Court etc.,* 15 Wash. 339, 46 P. 399; and *Beard v. State,* 81 Ark. 515, 99 S. W. 837.

Applying these principles to the facts of this case, we are constrained to agree with the conclusion of the trial court that the writ is not available as a remedy to correct the wrong of which the appellant complains. Neither in the petition, nor the supporting affidavits, is there any suggestion of force, duress, or coercion, nor is there any allegation of fraud. It is alleged that the State failed to call two witnesses who were actually present when the robbery was committed, who saw the robbers and were at the time of the trial presumably capable of stating whether the accused was one of them. But even if it be assumed that consistently with the obligation resting upon the State to promote the fair and impartial administration of justice, these witnesses should have been called, or their names furnished to the accused, it cannot be assumed that its failure to adopt that course amounted to fraud. There is no allegation of fraud to be found in the petition, and it is consistent with the allegations that their names were given to the accused. But whether known to him or not, the mere failure of the State to call them cannot in itself constitute such fraud as would support

the issuance of the writ, for we know of no principle which permits the court to infer fraud from the course of the state's attorney, who is charged with the responsibility of prosecuting those who have violated its laws, in producing the State's evidence.

It is unfortunate that there is no complete and adequate remedy for such a wrong as that of which the petitioner complains, but this court cannot create a remedy where none exists, since its function is to discover and apply existing law and not to make new law. Nor is it an easy thing to devise a remedy adequate to such a case, which would not at the same time bring with it evils in the form of uncertainty, delay, and confusion, more detrimental to the public security and welfare than the evil to be remedied.

If the truth of the allegations of the petition and the supporting affidavits is assumed, and in dealing with the question before us we assume that, it would be difficult to avoid the impression that a serious and injurious wrong may have been done the appellant. Because of the fallibility of all human agencies, it is inevitable that in the administration of criminal justice such errors must occasionally occur. When the fact that they may have occurred is credibly brought to the attention of the State, it is incumbent upon it to exert its power to ascertain whether there has been error, and, if it finds there has, to correct the wrong. This State maintains at the public expense in the parole commissioner an agency charged with the highly important duty of dealing with such questions, and investigating and discovering the truth or falsity of such allegations as are involved in the petition in this case, and bringing to the attention of the executive the result of his inquiry, that appropriate action may be taken. It is abhorrent to the common sense of justice that an innocent person should continue to suffer for a crime which he never committed, and it is injurious to the State that such facts as are stated in the petition in this case, if false, should go unchallenged. It is true the State filed its answer in this proceding, but, since the court lacked jurisdiction to issue the writ if the facts alleged in the

petition were true, it also lacked the jurisdiction to determine whether they were false or true.

For the reasons stated we concur in the action of the trial court in dismissing appellant's petition, and the order appealed from will be affirmed.

We find it unnecessary to discuss the motion to dismiss, which is overruled.

*Order affirmed, with costs.*

———

BOND, C. J., filed a separate opinion as follows:

I concur in the decision of the question submitted and the reasons given for it, but cannot associate myself with the concluding part of the opinion, because of a possibility (as it seems to me) that it may be taken as an expression of opinion that the appellant was convicted on false or mistaken testimony. This court would lack the knowledge of the case necessary to an opinion on that subject; the change of testimony after conviction would not be sufficient, standing alone, for we know that this occurs, not infrequently, when the truth of the original testimony cannot be doubted; and detection of the instances in which there has been perjury or mistake can well be left to those officials who are in closer contact with the cases, and have the power and responsibility for any action that may be called for.