# JOHNSON *v.* STATE

[No. 120, September Term, 1957.]

334

*Decided January 21, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Leonard A. Orman,* for appellant.

*James H. Norris, Jr., Special Assistant Attorney General,*

with whom were *C. Ferdinand Sybert, Attorney General,* and *J. Harold Grady, State's Attorney for Baltimore City,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from an order of the Criminal Court of Baltimore, which denied the appellant's motion to strike out or modify his sentence after his conviction of the crime of assault with intent to rape.

The appellant was convicted of said offense on May 9, 1956, and sentenced to a term of five years in the Maryland House of Correction. The victim of the assault was one Shirley Moore, who was the prosecuting witness. The appellant began to serve his term of imprisonment, and on March 1, 1957, long after the expiration of the term of court at which he was sentenced and the time limited in Maryland Rule 744 c, filed a motion, prepared without the aid of counsel, which he termed a motion to strike out or modify his sentence. The motion is quite lengthy, being replete with extraneous and immaterial matter. The hard core of the same is simply that the appellant, on November 29, 1956, received the following letter:

"To Whom It May Concern

Shirley Moore told me that Mr. Joseph M. Johnson (the appellant) did not rape her, she just said that: She said a girl named Merdy started all that mess.

(S) Lorraine Branch
(S) Julia Branch
("Lorraine Mother")"

He contended, in the motion, that the receipt of this letter constituted such newly discovered evidence, which showed that fraudulent and perjured testimony secured his conviction, as to require that his sentence be modified or stricken out.

It may be well, at this point, to analyse the nature of the motion, and consider what the duties of the judge were upon

its being filed. While it purports to be a motion to strike out or modify the sentence, it contains no allegation of facts that would form a basis to give the trial court jurisdiction to strike out or modify the same, after the time named in Rule 744 c and the expiration of the term at which the judgment was rendered. This Court, in *Madison v. State,* 205 Md. 425, 431, 109 A. 2d 96, stated the general rule is that a common-law court has no right to strike out or modify a judgment, upon motion made after the expiration of the term; but recognized as an exception to this rule, that it could do so for fraud, surprise, or mistake. (The Court also recognized that the trial court has the power to correct clerical errors in a judgment or inaccuracies in its form for the purpose of making it conform to the truth.) Of course, Maryland Rule 744 is another exception to the general rule, but it has no bearing on the present situation. It was further held in the *Madison* case that either the writ of error *coram nobis* or proper motion is available, in both civil and criminal cases without limitation as to time, to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment. The opinion, however, specifically stated that the writ of error *coram nobis* or motion in the nature of such a writ would not lie (1) to correct an issue of fact which had been adjudicated, even though wrongly determined, or (2) to determine whether any witnesses testified falsely at the trial, or (3) to present newly discovered evidence, or (4) to strike out a conviction on the ground that the prosecuting witness was mistaken in his identification of the accused as the person who committed the crime. (This, of course, does not apply to a motion for a new trial, seasonably made.) It is obvious that the motion in the present case is no more than an application to present allegedly newly discovered evidence in an attempt to prove that a witness testified falsely at the trial; so, it cannot be a motion in the nature of a writ of *coram nobis.* It is, in reality, a motion for a new trial, filed long after the time allowed for filing such a motion; because litigants cannot change what

is a motion for a new trial into a motion to strike out a sentence and judgment simply by styling it as such. *Price v. Warden,* 212 Md. 661, 663, 129 A. 2d 120. As the motion being considered was no more than a motion for a new trial, tardily filed, the only duty that devolved upon the trial court was to dismiss the same, when requested to rule thereon.

However, as a result of the motion, Judge Carter caused an investigation to be made by a police investigator who rendered his report to the judge. After receiving the report Judge Carter passed an order denying the motion, and it is from this order that the appellant has appealed.

The appellant, in this Court, admits that the trial judge was under no obligation to order an investigation, and possibly his motion did not contain the allegation of sufficient facts so as to give the trial judge jurisdiction, after the time mentioned in Rule 744 c and the expiration of the term at which he was sentenced, to modify or strike out his sentence; but contends that once an investigation was ordered, the appellant should have been notified thereof, "all of the rules of evidence * * * complied with," and the appellant afforded an opportunity to have been present at the "interrogations" and to cross-examine those interrogated. He cites, as authority for these contentions, the cases of *Driver v. State,* 201 Md. 25, 92 A. 2d 570 and *Farrell v. State,* 213 Md. 348, 131 A. 2d 863; but it is difficult to discover any controlling analogy between those cases and the one at bar. In the *Driver* case, the appellant complained that the judge, after his conviction but *before* the pronouncement of sentence, was improperly influenced by reading a report of the Chief Medical Officer, who had made a post-conviction investigation to aid the court in determining the kind and extent of punishment to be imposed. This Court held that in such cases it was usual to inform the defendant that he was to be investigated; and any information that might influence the trial court's judgment, which was not received from the defendant himself or was not given in his presence, should be called to his or his counsel's attention, without necessarily disclosing the sources of such information, so that the defendant might be afforded the opportunity to refute or discredit the same. The opinion

recognized the fundamental principle that a person accused of crime shall not be *convicted,* unless he be given reasonable notice of the charge against him and an opportunity to be heard in his defense, with the right of confrontation and cross-examination of adverse witnesses; but it specifically held that the judge, in order to determine the proper sentence to be imposed, may consider evidence obtained outside the courtroom from persons whom the defendant had not been permitted to confront or cross-examine. In the case at bar, the defendant had been convicted and sentenced nearly a year before the order appealed from; the information sought by the judge was not to aid in the imposition of sentence, but was apparently to assist the appellant's cause to ascertain if there were fraud, mistake or surprise in the judgment of sentence, so that the judge would have jurisdiction to open and reconsider same. There was certainly nothing prejudicial to the appellant in this kindly move. In the *Farrell* case, an unusual situation developed. On cross-examination of the defendant, it was brought out, for the first time, that he had been confined in Crownsville, an institution under the supervision and control of the Department of Mental Hygiene. At the conclusion of the evidence, but *before* verdict, the court asked the court-appointed attorney if there were "anything further." The attorney pointed out that the defendant's statement was the first intimation that he had had that the defendant had been in a mental institution; and requested the court to have the defendant examined. The court informed counsel that an examination would be made before the case was disposed of; and then rendered a verdict of guilty. Counsel immediately called to the court's attention that the reason he had requested an examination *before* the rendition of a verdict was that if the examination disclosed the defendant to be of unsound mind, the proper verdict would be not guilty by reason of insanity. The court then informed counsel that if he got a "medical" that indicated insanity, he could "always correct the verdict." A medical examination was made and a report thereof made to the court. Counsel requested, and was refused, the right to examine this report. Three months after the trial, the attorney,

who still had not been permitted to see the medical report, was notified to be in court for the disposition of the *Farrell* case, at which time the defendant was sentenced to death. In this extraordinary situation, we held that the trial court's verdict was tentative; *i. e.,* it was provisional upon the result of the medical examination. The result of this medical examination was, therefore, a vital factor and issue in the final determination of the verdict; consequently, it was clearly the right of the accused to know what was in the report, and any evidence that might affect the tentative verdict should have been taken in open court, subject to the rules of evidence, and we so held. The controlling factor in this determination was that the report aided the court in reaching its final verdict: whether the defendant was guilty or not guilty. We pointed out in that case that a different rule applies with reference to investigations made after verdict to assist the court in the imposition of sentence. In our present case, the report had nothing to do with the rendition of the verdict. The investigation and report were made long after the verdict and sentence. The court was under no obligation to order the investigation, nor to request the report. As stated above, the investigation was an attempt to be of assistance to the defendant if the facts warranted it, not to injure him. We are unable to find that the conduct of the judge prejudiced, in the slightest degree, any right of the appellant.

*Order affirmed, with costs.*