# MADISON *v.* STATE

[No. 23, October Term, 1954.]

*Decided November 12, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS and HENDERSON, JJ.

*James S. Morrow, Jr.*, and *Francis X. Gallagher*, with whom were *Thomas J. Kenney* and *Terrence E. Burke* on the brief, for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,*

*Anselm Sodaro, State's Attorney for Baltimore City,* and *William H. Maynard, Deputy State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is the second appeal taken by Sylvester W. Madison, who was convicted of the murder of Zelig Gerstein, a Baltimore grocer, and sentenced to death.

Gerstein was killed by a bullet fired from a revolver in his grocery store at 417 North Fremont Avenue on the morning of April 28, 1951. That night appellant was arrested and charged with the crime. On May 7, 1951, he was arraigned before the Criminal Court of Baltimore and pleaded not guilty. A month later he was tried before Judges Warnken, Moser and Byrnes and a jury.

The first witness for the State, Johnny Winder, testified that, while walking near Gerstein's grocery store, he heard a noise in the store, and he could see Gerstein and another man fighting. He heard Gerstein call for help and also heard the shot, but he did not see anyone else in the store.

The second witness, Annie Woods, likewise testified that she looked into the store and saw the two men fighting. She rushed to a nearby store to have a call put in for the police. She too testified that she did not see anyone else in the store.

The third witness, Delores Wooden, an alcoholic Negress, 21 years old, testified that she was in the store when Gerstein was shot and heard appellant tell Gerstein it was a holdup.

Appellant, who was 23 years old, and who had been convicted twice for burglary and once for larceny, denied that he had any intention to commit a robbery. He said that he lived àt 876 West Fayette Street, and that he stopped in the store on his way to work in East Baltimore to buy some bologna for his lunch. He testified that he told Gerstein that he did not like the way the meat was cut and wrapped; that an argument started,

and Gerstein said "You niggers never are satisfied," and ordered him to get out of the store. He said Gerstein then came from behind the counter; a tussle began; Gerstein got him down; and he bit Gerstein in the face. He then testified: "My gun fell out of my pocket. I was unaware it was in my pocket. I grabbed it after getting loose from Mr. Gerstein and tried to run. Mr. Gerstein grabbed me and gave a hit and the gun went off."

On June 7 the jury found appellant guilty of murder in the first degree, and on October 24 the Court sentenced him to be hung. He thereupon took his first appeal.

On April 4, 1952, the Court of Appeals affirmed the judgment. This Court, by an opinion written by Judge Markell, held that appellant had been given a fair trial and there was no reversible error. *Madison v. State,* 200 Md. 1, 87 A. 2d 593.

In 1954, after Governor McKeldin had set a date for the execution of appellant, Francis X. Gallagher, a young attorney, was asked by the chaplains at the penitentiary to take an interest in the case. Mr. Gallagher conferred with appellant in the penitentiary, after appellant had been confined to the death house more than two years and three months. He then undertook to locate Delores Wooden. When Delores appeared on February 13, 1954, she signed and made affidavit to the following statement:

"Although I was present early on the morning of April 28 in Gerstein's Grocery Store I did not see anyone shoot anyone else. At that time, I was under the influence of alcohol and I had been at party and had been drinking the night before. The year referred to is 1951 and the day is the date of the shooting of Zelig Gerstein. I did not see Sylvester Madison engage in a holdup nor did I see him shoot Mr. Gerstein.

"Although I may have made statements contrary to the truth, it was because I was ill and a great deal of pressure was brought on me by the police officers who questioned me."

Mr. Gallagher showed the affidavit to the attorneys who had defended appellant at the trial nearly three years before. They suggested that Delores be asked to sign a more specific affidavit. Accordingly on February 15, several days before the date set by the Governor for the execution, Delores signed and made affidavit to the following statement:

"On the morning Mr. Gerstein was shot I went into Mr. Gerstein's store to purchase some groceries. I made my purchase; as I left the store, I saw a man come in and this man had a scar near his left eye on his face. I don't know who the man was. I did not hear the man say this is a stickup. I did not see any gun. I heard nothing at all to indicate anything was wrong. I did not hear or see any part of a holdup or see anybody pull a gun. The boy who came in had a khaki jacket on. I didn't see anything happen. This man who came in was not masked. I remember that he had a scar immediately under his eye. I did not recognize the man who came into the store. I have seen Sylvester Madison since that time and I cannot say it was him."

On February 16 appellant filed (1) a motion to strike out the judgment and sentence and (2) a motion for a new trial. The ground for the motions was newly discovered evidence.

On February 19 Delores was interrogated in the office of the State's Attorney. The questions and answers were transcribed. The entire statement, to which she made affidavit, was almost entirely consistent with her testimony at the trial, thus repudiating the two affidavits she had made for counsel for appellant. Appellant moved the Court not to receive the affidavit made for the prosecution.

On March 9 the Court, with Judge Byrnes dissenting, overruled appellant's motion *ne recipiatur* and his motion

to strike out the judgment and sentence. The present appeal is from that order.

Appellant contends that Judges Warnken and Moser erred in ruling that the Court cannot strike out a judgment of conviction after the expiration of the term in which it was entered. In many States it has been held that no sentence can be changed after it has begun. In Federal cases the rule is that all judgments in criminal cases are under the control of the court during the term in which they are entered, provided that the punishment is not increased. *United States v. Bentz,* 282 U. S. 304, 51 S. Ct. 113, 75 L. Ed. 354. In Maryland all judgments are under the control of the court during the term in which they are entered, and during that time the court has inherent power to strike out or modify judgments in both civil and criminal cases. *Seth v. Chamberlaine,* 41 Md. 186, 194; *State v. Butler,* 72 Md. 98, 101, 18 A. 1105. In this State no appeal lies from an order striking out a judgment, but an appeal lies from an order overruling a motion to strike out a judgment, as the liability of the defendant is thereby fixed and determined, and if he had no right of appeal therefrom he would be without a remedy. *Dutton v. State,* 123 Md. 373, 378, 91 A. 417; *Miller v. State,* 135 Md. 379, 382, 109 A. 104; *Duker v. State,* 162 Md. 546, 549, 160 A. 279.

On the other hand, it is a general rule that a common-law court has no power to strike out or modify a judgment after the expiration of the term in which it was rendered. The obvious purpose of this rule is to secure stability for the judgments of the courts. However, it is recognized as an exception to the general rule that a court has the power to strike out or modify a judgment upon motion made after the expiration of the term on the ground of fraud, surprise, or mistake. The court also has the power to correct clerical errors in a judgment or inaccuracies in its form for the purpose of making it conform with the truth. *Kemp v. Cook,* 18 Md. 130, 138, 79 Am. Dec. 681; *Loney v. Bailey,* 43 Md. 10, 16; *Abell v. Simon,* 49 Md. 318, 322; *Bank of the United*

*States v. Moss,* 6 How. 31, 38, 12 L. Ed. 331, 334; *United States v. Mayer,* 235 U. S. 55, 35 S. Ct. 16, 19, 59 L. Ed. 129.

At common law the ancient writ of error *coram nobis* has been available to correct errors of fact. It has been allowed, without limitation of time, for facts affecting the validity and regularity of the judgment, and has been used in both civil and criminal cases. While the occasions for its use have been infrequent, no one has doubted its availability. It is still available in Maryland in both civil and criminal cases. In England the writ of *coram nobis* was issued out of Chancery like other writs, but the procedure by motion in the case is now. the accepted American practice. The present case was not brought on a writ of *coram nobis.* However, since the courts now act on motion to rectify such mistakes of fact as were originally reviewable on *coram nobis,* it is appropriate to say that *coram nobis* will not lie (1) to correct an issue of fact which has been adjudicated, even though wrongly determined, or (2) to determine whether any witnesses testified falsely at the trial, or (3) to present newly discovered evidence, or (4) to strike out a conviction on the ground that the prosecuting witness was mistaken in his identification of the accused as the person who committed the crime. The purpose of the writ is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment. It is manifest that if the writ were available to allow the court in which the judgment was entered to decide subsequently whether the witnesses who testified at the trial had testified falsely, and, if it should decide that they had, to strike out the judgment, then the judgment might be the beginning, rather than the end, of litigation. *Keane v. State,* 164 Md. 685, 689, 166 A. 410; *Bernard v. State,* 193 Md. 1, 65 A. 2d 297.

It is a firmly established rule in Maryland that the action of a trial court in overruling a motion for a new trial is not reviewable by the Court of Appeals. *Wilson v. State,* 181 Md. 1, 26 A. 2d 770; *Walker v. State,* 186 Md. 440, 47 A. 2d 47; *Newton v. State,* 193 Md. 200, 66 A. 2d 473. Even in those States where the action of the trial court in overruling a motion for a new trial is subject to review on appeal, it is held that when, subsequent to a conviction, an important witness for the State makes an affidavit that he committed perjury in his testimony at the trial, the accused is not entitled as a matter of law to a new trial, but a new trial will be granted only if the trial court in the exercise of its discretion determines that the recantation was probably true.

The Court of Appeals of New York, for instance, declared in *People v. Shilitano,* 218 N. Y. 161, 112 N. E. 733, 735, that if the law were otherwise, the power to grant a new trial for a convicted defendant would rest, not with the court, but with the witnesses who testified at the trial. In emphasizing the importance of the doctrine in that case, Judge Seabury forcefully stated: "Bearing in mind that the witnesses to crimes of violence are often of a low and degraded character and that after they have given their testimony they are sometimes influenced by bribery and other improper considerations, it is evident that the establishment of a rule which left the power to grant a new trial to a defendant to depend upon recantation by such witnesses would be subversive of the proper administration of justice."

We held in 1950 in *Czaplinski v. Warden of Maryland Penitentiary,* 196 Md. 654, 663, 75 A. 2d 766, 770, that it is beyond the power of a trial court to change a judgment in a criminal case after the term at which it was rendered.

In 1952 we held in *Wilson v. Warden of Maryland Penitentiary,* 200 Md. 652, 89 A. 2d 227, that a trial court has no power to strike out or reduce a sentence

imposed upon a convicted defendant after it has become enrolled.

The law of these cases has been modified by the rule of this Court which provides that in all criminal cases, except cases involving bastardy, desertion, and non-support, the court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of appeal. General Rules of Practice and Procedure, part 4, rule 10(c).

Appellant finally argues that if there is no remedy available to set aside his conviction after the discovery of the perjury of one of the witnesses at his trial, he is deprived by the State of due process of law. It is an established doctrine that if the State, by the active conduct or connivance of the prosecution, obtains a conviction through the use of perjured testimony, it violates civilized standards for a fair and impartial trial, and thus deprives the accused of his liberty without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States. *Mooney v. Holohan*, 294 U. S. 103, 55 S. Ct. 340, 79 L. Ed. 791, 98 A. L. R. 406; *Hysler v. State of Florida*, 315 U. S. 411, 413, 62 S. Ct. 688, 690, 86 L. Ed. 932; *Pyle v. State of Kansas*, 317 U. S. 213, 63 S. Ct. 177, 87 L. Ed. 214; *White v. Ragen*, 324 U. S. 760, 65 S. Ct. 978, 980, 89 L. Ed. 1348. But the mere recantation of testimony against an accused is not in itself a ground for invoking the Due Process Clause against a conviction. When a convicted defendant moves to set aside his conviction on the ground that it was procured by the use of perjured testimony, the burden is on him to show not only that material perjured testimony was used to convict him, but also that it was knowingly and intentionally used by the prosecuting authorities. *Reeder v. Warden of Maryland Penitentiary*, 196 Md. 683, 77 A. 2d 1; *Story v. Burford*, 10 Cir., 178 F. 2d 911, *certiorari* denied, 338 U. S. 951, 70 S. Ct. 482, 94 L. Ed. 587; *Hinley v. Burford*, 10 Cir., 183 F. 2d 581; *Wild v. State of Okla-*

*homa,* 10 Cir., 187 F. 2d 409; *United States v. Spadafora,* 7 Cir., 200 F. 2d 140.

The conclusion is irresistible that the order of the Court below must be affirmed, because appellant did not move to strike out the judgment and sentence until nearly three years after the term in which he was convicted, and he did not claim that the prosecution knowingly and intentionally used any perjured testimony against him.

*Order affirmed.*