796 A.2d 129

**Jacqdont Cliftshaun PITT,**

v.

**STATE of Maryland.**

**No. 00199, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

April 9, 2002.

50

Richard A. Finci, New Carrollton, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before HOLLANDER, JOHN J. BISHOP, Jr. and JAMES S. GETTY (Retired, Specially Assigned) JJ.

HOLLANDER, Judge.

This case has its genesis in a guilty plea to a felony drug charge tendered by Jacqdont Cliftshaun Pitt, appellant, on January 20, 1992, in the Circuit Court for Prince George's County. Eight and a half years later, on June 19, 2000, appellant filed a Petition for Writ of Error Coram Nobis (the "Petition"), claiming that his guilty plea was constitutionally defective because, for several reasons, it was not made knowingly and voluntarily. Further, appellant claims that, as a result of his "constitutionally invalid" plea, he suffered adverse collateral consequences. In particular, he complains that after he pleaded guilty in the underlying case, he was deemed a repeat offender in a subsequent, unrelated matter, as a result of the conviction at issue here. Consequently, Pitt received an enhanced sentence for the subsequent offense.

Following a hearing on the Petition on March 9, 2001, the Circuit Court for Prince George's County denied the requested relief. Pitt timely noted this appeal and presents a single issue for our review, which we have rephrased slightly:

Did the circuit court err when it found that appellant's guilty plea was made knowingly and voluntarily, thereby denying appellant's Petition for Writ of Error Coram Nobis?

For the reasons that follow, we shall affirm.

## FACTUAL SUMMARY

The facts of this case are largely undisputed. As we noted, appellant alleged in the Petition that his guilty plea of January 20, 1992, was not made knowingly and voluntarily. At the time of his guilty plea, appellant was twenty-one years old. During the guilty plea proceedings, the following transpired:

[DEFENSE ATTORNEY]: Pursuant to discussions we have had with Your Honor in chambers, with the State, etc., at this time Mr. Pitt will withdraw his previously entered plea of not guilty to Count Number Two in this indictment, which charges him with *possession with intent to distribute cocaine,* and enter a plea of guilty to that.

* * *

In this particular case, Your Honor, it is that *after the presentence report is completed and sentencing is set that Mr. Pitt face a 20 year suspended sentence,* all except one year, a period of active probation, five years.

All other charges in this indictment will be nol-prossed at sentencing. . . .

* * *

[THE COURT]: Do you understand the nature of these charges against you?

[APPELLANT]: Yes, ma'am.

* * *

[THE COURT]: And the factual basis for the plea?

[THE PROSECUTOR]: If this matter had gone to trial, the State would have proven that on October 23, 1990, at approximately 11:50 p.m., Officer Mammano of the Prince George's County Police Department received information from a confidential source stating the defendant would be in the area of 3400 Branch Avenue, Temple Hills, Prince George's County, Maryland, *delivering a quantity of cocaine.*

On that day and that given time, the defendant did in fact arrive in that area, and officers observed the description that the confidential source gave. A search revealed the defendant to be in possession of a quantity of crack-cocaine. That substance was field tested, and it did test positive for cocaine.

[THE COURT]: Is that the evidence against your client?

[DEFENSE ATTORNEY]: Essentially, yes, Your Honor. In fact, the observations were that *apparently he had passed a bag to another defendant,* and then when the officers came out and the bag was recovered, that bag did have cocaine. Other than that, there was no indication.

[THE COURT]: Mr. Pitt, were you listening as the prosecutor told the Court about the evidence in this case?

[THE APPELLANT]: Yes, ma'am.

[THE COURT]: Do you agree if your case went to trial that is how the State's witnesses would testify, what they would say?

[THE APPELLANT]: Yes, ma'am.

[THE COURT]: *Has your attorney explained to you the legal definition of possession with intent to distribute a controlled dangerous substance?*

[APPELLANT]: *Yes, ma'am.*

[THE COURT]: And have you talked to [defense counsel] about your case in general?

[APPELLANT]: Yes, ma'am.

\* \* \*

[THE COURT]: The Court is satisfied that the guilty plea is knowledgeably, voluntarily and intelligently made, and we will accept it.

(Emphasis added).

Thereafter, the circuit court sentenced appellant to a suspended term of twenty years, and placed him on five years of probation. In 1997, appellant was prosecuted in federal court for an unrelated offense. Following his federal conviction, appellant was sentenced as a repeat offender to an enhanced penalty of twice the mandatory minimum. That sentence prompted appellant's Petition.

The court held an evidentiary hearing on the Petition, at which appellant's attorney argued that Pitt's guilty plea was involuntary because "the elements of the crime were never set forth, ... the court never set forth the maximum penalties for the crime." In addition, Pitt's lawyer asserted that there was "an insufficient factual predicate" for the offense. Although appellant's attorney conceded that there is no requirement in Maryland obligating the court to distinguish a felony from a misdemeanor at the time a guilty plea is offered, he com-

plained that the crime was "never defined as a crime versus a misdemeanor...."

The following testimony of appellant was adduced at the hearing on the Petition:

[APPELLANT'S COUNSEL]: Can you tell the court what happened that day when you came to court?

[APPELLANT]: Well, basically, I came to court, and when I came to court, he [appellant's defense attorney] told me to take a plea. If I took a plea there was going to be no jail time. So, you know, I just took the plea, like he told me.

\* \* \*

[APPELLANT'S COUNSEL]: What did you plead guilty to?

[APPELLANT]: Possession.

[APPELLANT'S COUNSEL]: Why did you think it was possession?

[APPELLANT]: Because that is what he told me it was. He said it was possession.

[APPELLANT'S COUNSEL]: And what did you think possession meant?

[APPELLANT]: Just basically, simple possession. At the time I didn't really know anything but simple possession.

\* \* \*

[APPELLANT'S COUNSEL]: Did you come to learn something different later about what you pleaded guilty to?

[APPELLANT]: Now? Yes. Now, down the line I learned when they used it against me later on that it was a felony instead of what I thought was just simple possession, was a misdemeanor.

[APPELLANT'S COUNSEL]: So what I need to know is what, exactly, to the best of your recollection, did [defense counsel] tell you about the nature of the charge to which you were pleading guilty? If you recall?

[APPELLANT]: Basically, he didn't explain really nothing about the nature of the charge. All he explained was just the facts. Just the facts of what had happened, and he said I would be pleading guilty, and there would be no jail time.

\* \* \*

[APPELLANT'S COUNSEL]: Did at any time [defense counsel] sit you down and tell you what possession with intent to distribute meant?

[APPELLANT]: No. He never told me that.

[APPELLANT'S COUNSEL]: I am talking about now prior to January 20th, or on January 20, 1992?

[APPELLANT]: No, he never.

During cross-examination, appellant testified as follows:

[PROSECUTOR]: At the bottom of the same page, line 24, the court says—starting on line 21, the court says, "Mr. Pitt, were you listening as the prosecutor told the court about the evidence in this case?"

You say, "Yes, ma'am."

So were you telling the truth at that time?

[APPELLANT]: That was a long time ago. If the transcript says that, yes.

\* \* \*

[PROSECUTOR]: So you knew at the time that this plea was entered that the State expected to prove that you had a quantity of cocaine that you were delivering, isn't that true?

[APPELLANT]: I mean, basically, on that case right there, I was never—the other two defendants, both of their charges were dismissed, and they in actuality had the drugs, and I didn't think it was anything but possession for me.

[PROSECUTOR]: As to when you heard the word "delivering" here, that didn't mean anything to you?

[APPELLANT]: It didn't stick with me.

[PROSECUTOR]: Now, on page six of this transcript, the court says, "Has your attorney explained to you the legal

definition of possession with intent to distribute a controlled dangerous substance?" You replied, "Yes, ma'am."

Now, were you are [sic] telling the truth at that time, Mr. Pitt?

[APPELLANT]: I didn't know what possession with intent to distribute means until a later time, when they used this against me.

[PROSECUTOR]: Is the answer no, that he didn't explain this to you?

[APPELLANT]: He didn't explain to me that I was pleading to a felony, and I was pleading to possession with intent to distribute was a felony.

[PROSECUTOR]: Did he explain to you the legal definition of possession with intent to distribute?

[APPELLANT]: No, he didn't.

[PROSECUTOR]: So what you said to the court here wasn't true?

[APPELLANT]: I was going on what my attorney said to me; "Say yes to everything, and you will get no jail time," and that is what I was doing.

[PROSECUTOR]: No further questions.

[THE COURT]: Mr. Pitt, if I am not mistaken, but assuming you didn't have any prior record, the guideline sentence would be six months to three years, is that correct?

[DEFENSE COUNSEL]: It would have been.

[THE COURT]: So he got a sentence substantially below the guidelines?

[DEFENSE COUNSEL]: Yes, ma'am.

The court concluded that appellant's plea was voluntary, knowing, and intelligent, and denied appellant's request for relief. The court reasoned:

Basically, the complaint is that the plea was not freely, voluntarily, and intelligently made, because Mr. Pitt was not aware that it was a felony to be in the possession with intent to distribute. The penalties for the crime were not told on

the record, that the factual basis for the plea was insufficient.

\* \* \*

He took the plea, he got burned by the consequences of taking this plea when he got in trouble again, and in hindsight, if he knew it was a felony, he certainly wouldn't have done it. I can't look at the hindsight. I have to look at the transcript, I have to give great deference to [the trial court's] findings in this matter.

I find there is a sufficient factual basis. It said this is a plea of possession with intent to distribute cocaine, and [the] use of [the] words "to deliver" is used on page five, and on page six [the trial judge] asked, "Has your attorney explained to you the elements of possession with intent to distribute a controlled dangerous substance?"

And the defendant answers, "Yes."

And I think now I cannot believe [appellant] when he says that at that time he did not realize that he was pleading guilty to possession with intent to distribute.

Well, clearly it matters in the federal system if something is a felony or not. That is not something that we ordinarily mention in the course of taking a plea in Maryland. "Do you understand this is a felony?" "Do you understand this is a misdemeanor?"

\* \* \*

Additionally, possession with intent to distribute, while it carries a 20 year maximum, if you had no prior record in this court, the minimum sentence was six months to three years, and I think the fact that this sentence was such a fabulous deal, to me, makes it even more voluntary. He saw a good deal. He was caught with the cocaine, and he took it, and now there are collateral consequences, and that is a shame, but I see nothing involuntary about this plea. I think there is a factual basis for the plea, and I am going to deny the motion.

## DISCUSSION

Pitt contends that his guilty plea to the offense of possession with intent to distribute was not made knowingly and voluntarily, and therefore the circuit court improperly denied his request for coram nobis relief. In particular, Pitt alleges that there was no factual predicate to support his conviction for possession with intent to distribute, he did not understand that he was pleading guilty to a felony offense, he was not advised of the maximum penalty for the offense, and he suffered adverse collateral consequences as a result of the State conviction.

■ We begin our analysis with a review of the writ of error coram nobis. A coram nobis proceeding is an independent civil action. *Skok v. State,* 361 Md. 52, 65, 760 A.2d 647 (2000); *Ruby v. State,* 353 Md. 100, 107, 724 A.2d 673 (1999); *State v. Hicks,* 139 Md.App. 1, 6, 773 A.2d 1056 (2001). In *Keane v. State,* 164 Md. 685, 166 A. 410 (1933), the Court of Appeals explained the nature of the writ:

"The writ of error *coram nobis* is an old common-law writ recognized in this state. Its functions differ from an ordinary writ of error in that the latter raises questions of law, while it deals only with facts, which, if known at the time the judgment was rendered, would have prohibited its rendition. It is also unlike a writ of error, as it is addressed to the court which rendered the judgment, while a writ of error is addressed to some other and superior court."

*Id.* at 691, 166 A. 410 (citation omitted); *see Ruby,* 353 Md. at 105, 724 A.2d 673; *Johnson v. State,* 215 Md. 333, 336, 138 A.2d 372 (1958); *Miles v. State,* 141 Md.App. 381, 387, 785 A.2d 841 (2001); *Jones v. State,* 114 Md.App. 471, 475, 691 A.2d 229, *cert. denied,* 346 Md. 27, 694 A.2d 950, *cert. denied,* 522 U.S. 917, 118 S.Ct. 304, 139 L.Ed.2d 234 (1997).

As the Court recognized in *Keane,* 164 Md. at 691–92, 166 A. 410, the writ of error coram nobis "lies to obtain relief from such errors of fact as the infancy, death, or coverture of the defendant, in cases where those defenses, if known at the time, would have prevented a judgment, but which through no

fault of the defendant were not known when the judgment was entered." Further, the Court explained:

> Such facts would rarely affect the proceedings in a criminal prosecution; consequently the writ is less frequently available in such cases than in civil cases, and there is less uniformity in the decisions as to what errors of fact will justify its use in criminal prosecutions. But it has been generally held that, where the writ is available, it lies to reverse a judgment obtained by fraud, coercion, or duress, as where a plea of guilty was procured by force, violence, or intimidation, or where at the time of the trial the defendant was insane, when such facts were unknown to the court when the judgment was entered, or where the accused was prevented by fraud, force, or fear from presenting defensive facts which could have been used at his trial, when such facts were not known to the court when the judgment was entered.

*Id.* (internal citation omitted).

 On the other hand, coram nobis cannot be used to correct an issue of fact that has been adjudicated, even if it was wrongly determined. *See Johns v. State,* 216 Md. 218, 221, 140 A.2d 56 (1958); *Johnson,* 215 Md. at 336, 138 A.2d 372; *Madison v. State,* 205 Md. 425, 432, 109 A.2d 96 (1954); *Bernard v. State,* 193 Md. 1, 3–4, 65 A.2d 297 (1949); *Hawks v. State,* 162 Md. 30, 31, 157 A. 900 (1932)́. As coram nobis is "an attack on the judgment itself," the writ does not lie "to contradict or put in issue any fact" that was previously "adjudicated in the action." *Keane,* 164 Md. at 690, 166 A. 410. The Court explained in *Jackson v. State,* 218 Md. 25, 145 A.2d 234 (1958), that

> "the remedy is not broad enough to reach every case in which there has been an erroneous or unjust judgment, on the sole ground that no other remedy exists, but it must be confined to cases in which the supposed error inheres in facts not actually in issue under the pleadings at the trial,

and unknown to the court when the judgment was entered, but which, if known would have prevented the judgment." *Id.* at 27–28, 145 A.2d 234 (citation omitted).

The parameters of coram nobis were recently explicated in *Skok,* 361 Md. 52, 760 A.2d 647. There, the appellant was a U.S. permanent resident who served a few days in jail in connection with his guilty plea and his plea of *nolo contendere* as to two drug possession offenses. Despite the relatively minor nature of the offenses, Skok subsequently faced deportation proceedings because the convictions constituted immigration violations. Consequently, Skok filed, *inter alia,* a coram nobis petition, seeking to vacate his 1994 judgments of conviction. He argued, in relevant part, that his pleas were defective because the circuit court failed to comply with the requirements of Maryland Rule 4–242(c) and (d). In particular, he claimed that the court

> violated Rule 4–242(c) because the court did not require that the facts supporting the plea be read in open court in the defendant's presence, did not expressly find on the record that the factual basis supported a finding of guilty, did not advise Skok of the possible consequences of his plea, and did not properly advise Skok of his right to a jury trial. Skok claimed that the Circuit Court, in accepting his nolo contendere plea in October 1994, violated Rule 4–242(d) because there was no examination of Skok in open court for a determination that the plea was made voluntarily, with an understanding of the nature of the charge and the consequences of the plea. Skok also contended that due process principles were violated because both pleas were involuntary, that they were not knowingly and intelligently made, and that there was no valid waiver of his rights, including his right to jury trials.

*Id.* at 57–58, 760 A.2d 647. The circuit court denied Skok's request for coram nobis relief; the Court of Appeals reversed.

The Court of Appeals acknowledged that "the scope of the issues which could be raised in a traditional coram nobis proceeding" is "narrow." *Id.* at 68, 760 A.2d 647. Of particu-

lar interest here, the Court also made clear that, traditionally, "one of the issues which could be raised [in a coram nobis proceeding] was the voluntariness of a plea in a criminal case." *Id.* The Court explained, 361 Md. at 80–81, 760 A.2d 647:

> [T]he courts have consistently held that the scope of a coram nobis proceeding encompasses issues concerning the voluntariness of a guilty or nolo contendere plea, and whether the record shows that such plea was understandingly and voluntarily made under the principles of *Boykin v. Alabama, supra,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

\* \* \*

Moreover, the courts have regularly held that violations of rules similar to Maryland Rule 4–242, which are designed to insure that guilty and nolo contendere pleas are voluntary, constitute a basis for coram nobis relief.

In the *Skok* Court's view, "sound public policy" warranted a "somewhat broader scope of coram nobis." *Id.* at 70, 760 A.2d 647. The Court noted intervening changes in immigration law and the enactment of recidivist statutes, with attendant collateral consequences, as a basis to broaden coram nobis relief. *Id.* at 77–78, 760 A.2d 647. It reasoned: " '[T]he present-day scope of coram nobis is broad enough to encompass not only errors of fact that affect the validity or regularity of legal proceedings, but also legal errors of a constitutional or fundamental proportion.' " *Id.* at 75, 760 A.2d 647 (citation omitted). The Court said, at 361 Md. at 78, 760 A.2d 647:

> In light of these serious collateral consequences, there should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds. Such person should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law.

 The Court in *Skok* recognized that a plea taken in violation of constitutional principles or in violation of Rule 4–242(c) and (d) may fail "to ascertain from the accused the requisite answers, information or facts permitting the court to determine that a guilty plea . . . is voluntary." That would result in "an erroneous factual gap, relating to a voluntariness matter which is not adjudicated by the court on a complete factual record. . . ." *Id.* at 70, 760 A.2d 647. It cautioned, however, that important limitations apply to coram nobis when it serves as a basis to challenge criminal convictions. *Id.* at 78, 760 A.2d 647. First, the challenge must be of a "constitutional, jurisdictional or fundamental character." *Id.* at 78, 760 A.2d 647. Second, the petitioner must face "significant collateral consequences from the conviction." *Id.* at 79, 760 A.2d 647. Moreover, because a presumption of regularity attaches to the criminal case, the burden of proof is on the coram nobis petitioner. *Id.* at 78, 760 A.2d 647. But, coram nobis is not available when another remedy is applicable under statutory or common law. *Id.* at 80, 760 A.2d 647. Further, the principles of waiver apply to coram nobis actions. *Id.* at 79, 760 A.2d 647.

Significantly, the issues regarding the validity of Skok's plea were not litigated, although Skok faced "substantial collateral consequences from his two convictions," *id.* at 82, 760 A.2d 647, and he lacked any other remedy. Therefore, the Court determined that he was entitled to a hearing on his petition seeking coram nobis relief. *Id.*

 Whether a defendant's guilty plea was knowing and voluntary is a matter determined in the first instance by the court that accepted the plea. *See Jones*, 114 Md.App. at 479, 691 A.2d 229 (concluding that "the ability of appellant to understand and voluntarily enter a guilty plea was a fact issue that was decided by the [guilty plea] court" in that case). Before the trial court may accept a guilty plea, it must determine on the record that the defendant understands the nature of the charges and the consequences of the plea, that the plea is a voluntary one, and that a factual basis supports

the plea. *Metheny v. State,* 359 Md. 576, 602, 755 A.2d 1088 (2000); *Lovell v. State,* 347 Md. 623, 635, 702 A.2d 261 (1997); *Parren v. State,* 89 Md.App. 645, 647, 599 A.2d 828 (1991); *State v. Thornton,* 73 Md.App. 247, 250, 533 A.2d 951 (1987), *cert. denied,* 312 Md. 127, 538 A.2d 778 (1988).

Maryland Rule 4–242(c) is aimed at assuring that a guilty plea is made knowingly and voluntarily. The rule provides, in relevant part:

> (c) Plea of Guilty.—The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

Rule 4–242(c) has been interpreted to include that the defendant must be made aware of the maximum sentence he can receive when pleading guilty. *See Moore v. State,* 72 Md.App. 524, 526–27, 531 A.2d 1026 (1987). A criminal defendant is afforded the protections outlined above because "a plea of guilty is 'a grave and solemn act' to be accepted only with care and discernment." 1 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, R. 11 (2d ed.1982) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). As the Supreme Court has said, "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *see Sutton v. State,* 289 Md. 359, 364, 424 A.2d 755 (1981).

The transcript of the guilty plea proceeding in the case *sub judice* unequivocally establishes that appellant knew he was not merely pleading guilty to simple possession of

cocaine. Appellant was expressly informed that the charge at issue was possession with intent to distribute cocaine. Moreover, the statement of facts showed that appellant was found *"delivering* a quantity of cocaine." Thereafter, appellant's own trial attorney added that appellant "had passed a bag" to someone else. Further, appellant expressly acknowledged that his lawyer had advised him of the definition of possession with intent to distribute.

In addition, the record contains a clear reference to the statutory maximum period of incarceration that appellant faced, although it was not characterized as the statutory maximum. Appellant's defense counsel said that, "[i]n this particular case, Your Honor, . . . after the presentence report is completed and sentencing is set . . . Mr. Pitt face[s] a 20–year suspended sentence, all except one year, a period of active probation, five years." We are satisfied that, in the context of this case, this statement was sufficient to put appellant on notice of the maximum sentence. As the court below suggested, appellant fully realized that his exposure to incarceration was substantial, which undoubtedly influenced him to accept the plea offer.

We are also satisfied that coram nobis relief does not lie merely because Pitt was not advised at the guilty plea proceedings of the serious consequences that he could suffer if he were later found to be a repeat offender. We explain.

The concept of enhanced penalties for repeat offenders was already established by the time Pitt pleaded guilty in 1992; Maryland's recidivist statute has been in place since 1977. *See Jones v. State,* 336 Md. 255, 264, 647 A.2d 1204 (1994). But, the failure of a court to advise a defendant of a recidivist statute does not automatically render a defendant's plea constitutionally invalid. Maryland Rule 4–242(e) provides, in part, that "omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid."

Although the recent case of *Booze v. State,* 140 Md.App. 402, 780 A.2d 479 (2001), does not concern coram nobis relief,

it is nonetheless instructive. There, the defendant challenged the denial of a motion to correct an illegal sentence in a drug case. He claimed that he received an illegal enhanced sentence under Art. 27, § 286(c), as a subsequent offender, because he had not been advised in 1994, when he pleaded guilty to the predicate offense, that a subsequent conviction would result in a mandatory minimum sentence. We disagreed, concluding that the trial court had no duty to advise the defendant explicitly at a guilty plea proceeding of the consequence of enhanced penalties in the event of a subsequent conviction. *Id.* at 411, 780 A.2d 479; *see Moore*, 72 Md.App. at 526, 531 A.2d 1026. In reaching that result, we reasoned that the "enhanced penalty is not a direct consequence of the plea itself, but rather a consequence of the person's future conduct." *Booze*, 140 Md.App. at 411, 780 A.2d 479. Further, we said that "the prior conviction itself should constitute adequate warning. . . ." *Id.* We also relied on *Yoswick v. State*, 347 Md. 228, 700 A.2d 251 (1997), in which the Court of Appeals determined that "due process does not require 'that a defendant be advised of the indirect or collateral consequences of a guilty plea, even if the consequences are foreseeable.' " *Id.* at 240, 700 A.2d 251.

▆▆ Here, the collateral consequence, the enhanced federal sentence, stemmed from unrelated conduct of appellant that occurred after he pleaded guilty in 1992, and obviously could not have been known to the court when appellant's plea was taken. Moreover, at the guilty plea proceedings in 1992, the court was not required to inform appellant of possible enhanced penalties if, in the future, he should again be found in violation of the criminal law. Indeed, the court could not be expected to predict appellant's future behavior.

Based on all of the foregoing, we conclude that the record does not support the reasons Pitt assigns for his coram nobis request. To the contrary, appellant's guilty plea was made knowingly and voluntarily.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**