JOHNS *v.* WARDEN OF MARYLAND
PENITENTIARY

[H. C. No. 26, October Term, 1954.]

*Decided May 18, 1955.*

Before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

COLLINS, J., delivered the opinion of the Court.

This is an application for leave to appeal from the refusal of a writ of *habeas corpus* by Judge John T. Tucker, of the Baltimore City Court, on January 7, 1955. Since that action by Judge Tucker the writ has been denied to the petitioner on January 25, 1955, by Judge E. Paul Mason and on March 7, 1955, by Judge Michael J. Manley. We are informed that he has been denied the writ of *habeas corpus* twenty-seven times. He was convicted of murder on January 9, 1938, and sentenced to life imprisonment. This is his second application for leave to appeal to this Court. The first application was denied by this Court on November 11, 1954, in *Johns v. Warden*, 205 Md. 644, 108 A. 2d 906. One of the grounds alleged therein was that perjured testimony was used against him. In rejecting this argument we said: " 'A bald assertion that perjured testimony was deliberately used against him is insufficient, in the absence of "facts showing that the State's officers used testimony known to be perjured, or participated in any conspiracy to defraud petitioner of his rights." ' *Reeder v. Warden*, 196 Md. 683, 685, 77 A. 2d 1, and cases there cited."

In this second application to appeal, now before us, petitioner alleges that the testimony used by the State to convict him amounted to perjury and that the State's Attorney knew that such testimony was not true. To substantiate this allegation he says that Maggie Maitland, the only witness against him, when interviewed by Officer Herman Trautner on October 31, 1937, the date George Carter was killed, about the murder for which he was convicted, stated to that officer that she did not know anything about it. He further says that on November 2, 1937, Maggie Maitland told Officer Trautner: "Arrest that man. That was the fellow that stabbed Carter on George Street," and Officer Trautner then arrested him. He and Maggie Maitland were then taken before a magistrate and Maggie Maitland there stated that she saw the petitioner, another man, and George Carter leave a cafe

together and proceed to 626 George Street. There the petitioner stabbed George Carter. Petitioner and the other man then left Carter lying on the steps of 626 George Street. The two men returned later, the other man throwing bricks at the deceased. They left again and returned twenty minutes later and the other man took money from the deceased's pocket. The assailants then left and disappeared. Petitioner further states that at the coroner's inquest held on November 3, 1937, Maggie Maitland testified in the presence of an assistant State's Attorney: "He stabbed him once. That's when I saw him, and then he went away and came back again and pulled out the knife and came back again and did like that." She further said, when asked whether petitioner stabbed him again: "That was twice I see it, yes, sir, and that is all I saw." Petitioner further alleges that at his trial on or about December 15, 1937, the record will show that the attorney for the State made the following opening statement: "At this moment a woman, the witness, Maggie Maitland,—she had walked west from Pennsylvania Avenue from some restaurant there, west on Biddle Street, and she turned the corner into George Street. George Street and Biddle Street meet there at an angle, right at the exit or stopped point of Pine Street, and she proceeded to walk eastward on George Street, and as she did so she heard the deceased holler: 'They're robbing me, They're robbing me.' At this same time she saw one of these two men go into the pockets of Carter's coat. As she approached still closer, the two men got up from their struggle, and left the man Carter on the steps, and walked toward her, and across the street, southward in the direction of Pine Street, and as they did so, one of these men pulled his hat down over his face, and this witness, Maggie Maitland, told him, 'You needn't bother about doing that. I know you.' Nothing else was said or done. They calmly continued walking across the street. In the meantime, Maggie walked to her own door way, which was two doors away, 622 George Street, and she went into the vestibule of her house. She turned and

peeped out, and she saw these same two men return and the man who pulled his hat down over his face then got the deceased from the steps, pulled him up, and stabbed him twice in his left side. They then ran away, ran down toward Pine Street, and disappeared." After this opening statement was made, Maggie Maitland, as a witness for the State, corroborated the State's Attorney's opening statement in identical details.

Petitioner contends that the statements made by Maggie Maitland to the officer the night the crime was committed, at the coroner's inquest, and at his trial were so conflicting as to prove that her testimony was not true. He further states that the State's Attorney's office, being represented at the coroner's inquest, had a transcript made of the record there, and that this transcript was in the possession of the attorney for the State at the time of the trial, and, therefore, the prosecuting officers knew that her testimony was not true.

It was said for this Court by Judge Delaplaine in the case of *Madison v. State,* 205 Md. 425, 434, 109 A. 2d 96, 100: "It is an established doctrine that if the State, by the active conduct or connivance of the prosecution, obtains a conviction through the use of perjured testimony, it violates civilized standards for a fair and impartial trial, and thus deprives the accused of his liberty without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States. *Mooney v. Holohan,* 294 U. S. 103, 55 S. Ct. 340, 79 L. Ed. 791, 98 A. L. R. 406; *Hysler v. State of Florida,* 315 U. S. 411, 413, 62 S. Ct. 688, 690, 86 L. Ed. 932; *Pyle v. State of Kansas,* 317 U. S. 213, 63 S. Ct. 177, 87 L. Ed. 214; *White v. Ragen,* 324 U. S. 760, 65 S. Ct. 978, 980, 89 L. Ed. 1348. But the mere recantation of testimony against an accused is not in itself a ground for invoking the Due Process Clause against a conviction. When a convicted defendant moves to set aside his conviction on the ground that it was procured by the use of perjured testimony, the burden is on him to show not only that material perjured testimony was used to convict

him, but also that it was knowingly and intentionally used by the prosecuting authorities. *Reeder v. Warden of Maryland Penitentiary,* 196 Md. 683, 77 A. 2d 1; *Story v. Buford,* 10 Cir., 178 F. 2d 911, *certiorari* denied, 338 U. S. 951, 70 S. Ct. 482, 94 L. Ed. 587; *Hinley v. Burford,* 10 Cir., 183 F. 2d 581; *Wild v. State of Oklahoma,* 10 Cir., 187 F. 2d 409; *United States v. Spadafora,* 7 Cir., 200 F. 2d 140."

We are of opinion that the recital of the testimony of Maggie Maitland, here alleged, is not sufficient to show either that she committed perjury or that the State's officers knew that her testimony was perjured. The weight of such testimony was for the trier of facts. It has been frequently stated by this Court that the insufficiency of evidence is not a basis for the issuance of a writ of *habeas corpus. Johns v. Warden, supra,* and cases there cited.

*Application denied, with costs.*