773 A.2d 1056

**STATE of Maryland**

v.

**Doug HICKS.**

**No. 0201, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

June 5, 2001.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, on the brief), Baltimore, for appellant.

Margaret L. Lanier, Asst. Public Defender ( Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellee.

Argued before ADKINS, MOYLAN,* and THIEME,** JJ.

**ON REMAND ON MOTION FOR RECONSIDERATION**

ADKINS, Judge.

This appeal reaches this Court after remand from the Court of Appeals. We are directed to reconsider whether the Circuit Court for Baltimore City erred in granting appellee's request for a writ of *coram nobis* in light of the opinion of the Court of Appeals in *Skok v. Maryland*, 361 Md. 52, 760 A.2d 647 (2000).

In 1979 Doug Anthony Hicks, appellee, pled guilty to and was convicted of robbery. He was sentenced on April 23, 1979, to ten years of incarceration, which was suspended in favor of five years on probation. On June 11, 1981, Hicks was found in violation of his probation and was sentenced to ten years incarceration. He completed his term of incarceration for that offense.

On October 25, 1996, Hicks filed an Emergency Petition for Writ of Error *Coram Nobis*, challenging his 1979 robbery plea and seeking to prevent the use of the 1979 robbery conviction in a pending sentencing in federal court in connection with his federal conviction as a felon in possession of a handgun. Following a hearing, Hicks' petition was granted and his 1979 conviction vacated.

The State timely noted an appeal, asking us to determine if the circuit court erred in granting Hicks' petition for *coram nobis* relief where the issuance of the writ was predicated upon questions of law and matters in issue at Hicks' 1979 guilty plea proceeding. In an unreported decision issued June 14, 2000, we vacated the granting of the petition and remand-

---

* Moylan, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

** Thieme, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

ed the case for further proceedings. In light of the broadened scope of a *coram nobis* proceeding authorized by the Court of Appeals in *Skok*, we affirm the decision of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

The agreed statement of facts submitted at Hicks' guilty plea hearing on March 8, 1979, established that at 6:10 p.m. on November 22, 1978, Hicks and Karl Davis, who was armed with a revolver, approached David Love and David Begham on a street in Baltimore City and proceeded to rob the two men. A Maryland Transportation Authority (MTA) pass valued at $25 was taken from Mr. Love, and nothing was taken from Mr. Begham. Hicks and Davis then told the victims to kneel, and then walked down the street and out of sight. At that point the police were notified and Messrs. Love and Begham gave a description of the robbers to the police. Subsequently, Hicks and Davis were arrested. The police officers recovered the gun and Mr. Love's MTA pass.

On the morning of March 8, 1979, just prior to the guilty plea hearing, Hicks was seen by the Court Medical Services Office ("CMSO") for an evaluation on his motion to transfer the matter to the juvenile court. At the hearing, the court placed on the record "a fair statement of what transpired" in an earlier chambers discussion, and stated that the "report [of the CMSO] was being dictated at that very minute, [and] that the [c]ourt would have the report in its hands in the early afternoon." The court then stated that the Administrator of the CMSO advised that it "was going to recommend that the [c]ourt not grant a request for a waiver, reverse waiver." The following then transpired:

> [DEFENSE ATTORNEY]: Based upon the fact Your Honor has related those matters on the record to counsel, I had discussed the merits of the Motion for Reversed Waiver with both Mr. Hicks and his mother, Mrs. Dorothy Hicks, who is present in [c]ourt at the moment, and it was my recommendation to him, based upon the plea overtures made by [the State's attorney] that we abandon the Motion

for Waiving Jurisdiction to the Juvenile Court of Baltimore City that was filed in this case, that it be abandoned or withdrawn, as the case may be. So we are withdrawing that motion at this time, Your Honor, with the consent of Mr. Hicks.

Step forward, Mr. Hicks. Do you understand what I have just told the [c]ourt concerning the Motion that I filed on your behalf to have your case sent back to Juvenile Court?

[Mr. Hicks]: Yes.

Hicks then entered a plea of guilty to the crime of robbery, and was sentenced.

Eighteen years later, on October 25, 1996, Hicks filed an Emergency Petition for Writ of Error *Coram Nobis,* in conjunction with a motion to shorten the time to answer and a request for an expedited hearing. In this petition, Hicks informed the court that he had been "found guilty of felon in possession of a handgun ... in the United States District Court for the District of Maryland.... Sentencing is scheduled for November 13, 1996. Unless this petition is granted, the conviction ... will be improperly used not only to increase his sentence ... but as the predicate offense for the federal conviction."

The basis for the petition was Hicks' allegation that the conviction was constitutionally invalid for six reasons: (1) neither the court nor counsel advised Hicks during the guilty plea litany of the burden of proof and standard of proof required in a criminal case; (2) he was not advised that he was presumed innocent; (3) he was not advised of the nature of the charges against him, and no effort was made to determine if he understood the charges; (4) he was not adequately examined by the criminal court's medical office on his motion to transfer jurisdiction to the juvenile court; (5) he was denied effective representation by counsel; and (6) his guilty plea was neither voluntary nor intelligent.

On December 1, 1997, the circuit court held a hearing on Hicks's motion for *coram nobis* relief. After the hearing, on

February 12, 1999, the petition for writ of error *coram nobis* relief was granted and the 1979 judgment of conviction and sentence entered against Hicks were vacated. The State timely appealed that order. In our June 14, 2000 unreported decision, we vacated the writ and remanded the case for the trial court to consider whether the absence of the CMSO report was a sufficient basis by itself to grant *coram nobis* relief. The Court of Appeals, after accepting a petition for *certiorari* filed by both parties, directed that we reconsider our decision in light of its decision in *Skok v. State*, 361 Md. 52, 760 A.2d 647 (2000).

Additional facts will be added as necessary to our discussion of the issue.

## DISCUSSION

### I.

### Appealability Of Decision On *Coram Nobis* Petition

In the first appeal to this Court, Hicks challenged the State's right to appeal a decision on a petition for *coram nobis*. We held in an unreported opinion that the State did have a common law right to appeal, which was not removed by the provisions of the Post Conviction Procedure Act, Md.Code (1957, 1996 Repl. Vol.), Art. 27, § 645A.

In *Skok*, the Court of Appeals held, in a ruling of first impression, that a defendant has a right of appeal from a decision on a petition for *coram nobis* pursuant to the broad right of appeal given in the general appeals statute. *Skok*, 361 Md. at 65–66, 760 A.2d 647; Md.Code (1974, 1998 Repl. Vol.), § 12–301 of the Courts and Judicial Proceedings Article ("CJ"). Because a petition for writ of *coram nobis* is a civil proceeding, *Ruby v. State*, 353 Md. 100, 111, 724 A.2d 673 (1999), the State is not limited to the circumstances described in CJ § 12–302(c). Rather, following *Skok*, we now hold that the State has the same statutory right of appeal that the *Skok* Court recognized with respect to a defendant.

## II.

## Analysis Of The Trial Court's Decision

The trial court rested its decision to grant Hicks's petition on four grounds:

(1) Hicks was not given advice as to the burden of proof or the standard of proof, and was not advised that he would be presumed innocent;

(2) Hicks was not advised of the nature of charges against him;

(3) The CMSO did not conduct an adequate evaluation of Hicks at the time of his guilty plea; and

(4) Hicks's guilty plea was neither voluntary nor intelligent.

In our June, 2000 opinion, we held that the trial court erred with respect to grounds (1), (2), and (4) because those grounds were based on procedural defects that were not properly correctable on a petition for *coram nobis*. We also vacated the circuit court's ruling with respect to the third ground because the record was not sufficiently complete for us to determine whether the circumstances surrounding the CMSO report constituted facts unknown to the original court, "which, if known, would have prevented the judgment which actually was entered from being entered." *Keane v. State*, 164 Md. 685, 689, 166 A. 410 (1933). The Court of Appeals' decision in *Skok* to broaden the scope of *coram nobis* relief causes us to modify our decision as to each of these grounds.

## A.

## Procedural Defects

The record of Hicks's guilty plea established that he was not advised in court as to the burden of proof, the standard of proof, or the presumption of innocence. Nor was he given advice as to the elements of the offense of robbery. The trial court found that the failure to give advice to Hicks regarding these matters was a "basis to grant relief." It further found, as a separate "basis to grant relief," that because the convict-

ing court failed to advise Hicks in 1979 as to the elements of the offense, the plea of guilty to the robbery charge was not voluntary or intelligent.

The grounds for Skok's petition for *coram nobis* were similar. He challenged the voluntariness of his plea for *nolo contendere* on the grounds that the circuit court failed to comply with the requirements of Rule 4–242(c) and (d). Specifically, he argued that

> the court did not require that the facts supporting the plea be read in open court in the defendant's presence, did not expressly find on the record that the factual basis supported a finding of guilty, did not advise Skok of the possible consequences of his plea, and did not properly advise Skok of his right to a jury trial.

*Skok,* 361 Md. at 57, 760 A.2d 647. The Court of Appeals, after examining the history of the *coram nobis* proceeding in other jurisdictions, rejected traditional constraints on *coram nobis,* finding that "[m]ore recent cases and sound public policy warrant a somewhat broader scope of coram nobis." *Id.* at 70, 760 A.2d 647.

> Seeking to distinguish *Skok,* the State now argues:
> The particular types of "serious collateral consequences" anticipated by the Court of Appeals as potential grounds for expanded *coram nobis* relief involve the "proliferation of recidivist statutes" in recent years and "recent changes in federal immigration laws, regulations, and administration," resulting in a "plethora of deportation proceedings against non-citizens based on relatively minor criminal convictions." Thus, the Court of Appeals held that Skok's recently being subject to deportation based upon his criminal convictions constituted serious collateral consequences warranting consideration of a petition for *coram nobis* relief in his case. . . .

In contrast ... Hicks's case involves neither recent changes in immigration laws nor recent recidivist sentencing concerns. Rather, Hicks's 1979 state robbery conviction was the basis of, as well as a necessary element of, his federal conviction under 18 U.S.C. § 924 for his subsequent

possession of a handgun under the federal statute prohibiting possession of a handgun by a felon. Notwithstanding the expanded availability of *coram nobis* to raise challenges based upon questions of law, because Hicks's case involves no intervening changes in law, he states no grounds warranting *coram nobis* relief as made available under *Skok.*

We believe the State takes an overly restrictive view of the Court of Appeals' decision in *Skok.*

Although *Skok* assigned as reasons for its decision the intervening changes in immigration law, and recidivist statutes, it did not carve out a special remedy limited only to those persons subject to a recidivist statute or deportation proceeding. The following passage from its opinion reveals several reasons for its broadening of the *coram nobis* remedy:

> Along with the vast majority of appellate courts which have considered the matter, we believe that the scope of *coram nobis,* as delineated in *United States v. Morgan,* [346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)] is justified by contemporary conditions and public policy. Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.
>
> Moreover, serious collateral consequences of criminal convictions have become much more frequent in recent years. The past few decades have seen a proliferation of recidivist statutes throughout the country. In addition, apparently because of recent changes in federal immigration laws, regulations, and administration, there has been a plethora of deportation proceedings against non-citizens based on relatively minor criminal convictions. . . .

In light of these serious collateral consequences, there should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds. Such person should be able to file a motion for *coram nobis* relief regardless of whether the alleged infirmity in the conviction in considered an error of fact or an error of law.

*Skok*, 361 Md. at 77–78, 760 A.2d 647 (footnote omitted).

■ Nowhere in the *Skok* opinion does the Court of Appeals suggest that a court considering a *coram nobis* petition must look to the particular circumstances of the petitioner to see whether a new recidivist statute or change in immigration law applies before considering his petition. Rather, the Court delineates only five qualifications to *coram nobis* relief, which we have summarized below.

(1) "[T]he grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental character." *Id.* at 78, 760 A.2d 647.

(2) "[A] presumption of regularity attaches to the criminal case, and the burden of proof is on the coram nobis petitioner." *Id.*

(3) "[T]he coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction." *Id.* at 79, 760 A.2d 647.

(4) "Basic principles of waiver are applicable to issues raised in coram nobis proceedings." *Id.*

(5) "[O]ne is not entitled to challenge a criminal conviction by a coram nobis proceeding if another statutory or common law remedy is then available." *Id.* at 80, 760 A.2d 647.

■ In a further effort to support its argument, the State contends that "[t]he Court of Appeals explicitly stated, however, that where 'there are no intervening changes in the applicable law or controlling case law, the issue may not be relitigated in a *coram nobis* action.' [*Skok*] at 79[, 760 A.2d

647]." The State's quote from *Skok* is seriously incomplete and misleading. The full text of the *Skok* Court's statement makes the meaning clear:

> Basic principles of waiver are applicable to issues raised in coram nobis proceedings. Similarly, where an issue has been finally litigated in a prior proceeding, and there are no intervening changes in the applicable law or controlling case law, the issue may not be relitigated in a coram nobis action.

*Skok*, 361 Md. at 79, 760 A.2d 647 (citations omitted). Put in context, it is clear to us that the Court of Appeals was not intending to limit the broadened *coram nobis* remedy to petitioners who were subject to intervening changes in applicable law. The Court was simply explaining that the final litigation rule applied, and part of the final litigation rule is the recognition that, even when an issue has been finally litigated, an intervening change in controlling case law may entitle a petitioner to relitigate the issue.

The issue as to whether a plea is voluntary and intelligent is a matter for the trial court to determine. We will uphold such a determination unless there are not sufficient facts in the record to support it. Evidence that appellant was not advised as to the burden of proof, the standard of proof, or the presumption of innocence was sufficient evidence to support a lack of voluntariness finding. *See James v. State*, 242 Md. 424, 428, 219 A.2d 17 (1966) (holding that, for guilty plea to be valid, the circumstances must show a voluntary desire on the part of the accused to plead guilty, with an intelligent understanding of the nature of the offense and the possible consequences of such a plea); *Davis v. State*, 278 Md. 103, 118, 361 A.2d 113 (1976)(holding that the standard for acceptance of guilty pleas is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant); *see also* Rule 4–242(c) (record must show that "defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea").

## B.

## Inadequate Evaluation of Petitioner
## By Court Medical Services

The third ground relied upon by the trial court related to the evaluation of Hicks by the CMSO for purposes of giving a recommendation on his pending motion for a reverse waiver pursuant to Art. 27, section 594A. Under this section, a child charged with an offense, which would invoke the jurisdiction of the circuit court under CJ sections 3–804(e)(1) or (4) because he is over fourteen years of age at the time of an alleged offense, may seek to have his or her case transferred to juvenile court, with certain restrictions, on the grounds that a waiver of jurisdiction is "in the interests of the child or society." Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 594A(a). In considering the merits of such a request for waiver, the court is required to consider the following:

(1) Age of child;

(2) Mental and physical condition of child;

(3) The child's amenability to treatment in any institution, facility, or program available to delinquents;

(4) The nature of the alleged offense; and

(5) The public safety.

§ 594A(c).

As indicated earlier, Hicks filed a reverse waiver motion, but withdrew it the morning of his guilty plea after he was informed that the CMSO, which was assigned the task of performing an evaluation of defendants who filed such motions, recommended against his reverse waiver. The trial court in the instant proceeding reviewed the record from the original plea, including counsel's statement that the adverse recommendation caused Hicks to withdraw his reverse waiver motion and enter a guilty plea. Based on its review, the trial court wrote:

It is clear from the record that [Hicks] was first seen by Court Medical Services the morning that he was to be tried (March 8, 1979), the same day on which [Hicks] pled guilty.

The investigation of [Hicks] by Court Medical was practically instantaneous. No written report of the Court Medical's findings as to the five (5) factors for Transfer of Jurisdiction or a recommendation as to the Transfer Motion was submitted at or before the hearing. (Footnotes omitted).

The Court qualified and clarified the immediately preceding sentence with the following footnote:

This court notes that there were two copies of the medical report in the court file, one was supplied by [Hicks's] counsel with a letter dated May 23, 1997 from Court Medical Services indicating that it was the report supplied to the trial judge on March 8, 1979, the same day that [Hicks] was evaluated, the other was a taped sealed envelope with a date stamp and time marking presumably indicating receipt on 3/13/79 at 11:45. This court also notes that even if the Medical Report had been received before the hearing, the report focused primarily on [Hicks's] competence to stand trial, rather than the five (5) factors and [Hicks's] amenability to treatment in the juvenile system and is still less than two pages in length.

The court went on to draw conclusions about the insufficiency of the report: [1]

It is hard to fathom that there was a sufficient investigation by Court Medical Services. [Hicks] was seen on the same day as his guilty plea, the investigation was rushed through the office, there is no indication that any of the five (5) factors required to be considered were addressed at the hearing, and based on this rushed oral report [Hicks] pled guilty without the benefit of being able to address the five factors and how that affected the oral recommendation of the Court Medical Office. (Footnotes omitted).

In our June 2000 opinion, applying a more narrow concept of *coram nobis*, we considered it necessary to determine "whether the circumstances surrounding the report constitut-

---

1. Unfortunately, the report from the Court Medical Services is not included in the record on appeal.

ed facts unknown to the original court 'which, if known, would have prevented the judgment which actually was entered from being entered.' *Keane*, 164 Md. at 689, 166 A. 410." Under the broader scope of *coram nobis* relief adopted in *Skok*, we no longer consider it necessary to resolve this question.

Thus, we are merely presented with the State's argument that,

[w]hen Hicks expressly abandoned his waiver motion, any matter relating to Hicks's motion for reverse waiver, including the contents of the report prepared in connection with that motion, became moot. Issues relating to the waiver motion were, as a result of Hicks's withdrawal, no longer viable and, necessarily, were not before the circuit court in the guilty plea proceedings which were the subject of Hicks's request for *coram nobis* relief.

We do not agree that the issues with respect to the CMSO became moot. The entry of the guilty plea and the receipt of the CMSO report occurred on the same morning. Further, appellant's counsel expressly stated on the record that his client had decided to plead guilty, in part, in reliance upon the results of the CMSO report. As we said in our June 2000 opinion, a trial court could find that at the time Hicks entered his guilty plea, he was assuming that the CMSO had carried out its responsibility, and was unaware that the wrong analysis had been utilized in the report. A trial court could also find that the assumptions that he made were material to his decision to enter a guilty plea, and that he would not have entered the plea, or the court would not have accepted his plea, if either knew that the CMSO had not provided an analysis of the statutory factors. We think these findings are implicit in the trial court's decision that the plea was not voluntary, in part, because of the circumstances surrounding the CMSO report.

### Summary

In sum, the trial court relied on several procedural factors in reaching its conclusion that Hicks's guilty plea was neither voluntary nor intelligent. Under the new standards for *coram*

*nobis* announced in *Skok,* these procedural violations may constitute a basis for relief. The trial court also relied on the incomplete and invalid nature of the CMSO report that Hicks explicitly relied on in deciding to plead guilty. This reliance was also a valid basis to consider in deciding whether the plea was intelligent and voluntary. For these reasons, the trial court did not err in granting *coram nobis* relief.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**