REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 601

September Term, 2010

ON MOTION FOR RECONSIDERATION

_____

OTIS RICH

v.

STATE OF MARYLAND

_____

Berger,
Nazarian,
Alves, Krystal Q.
        (Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.
_____

Filed:  November 1, 2016

Otis Rich pled guilty in the Circuit Court for Baltimore City to possession with intent to distribute a controlled substance in 1993, possession with intent to distribute and conspiracy to distribute a controlled substance in 2001, and second-degree assault in 2002. In April 2009, he pled guilty in the United States District Court for the District of Maryland to conspiracy to distribute cocaine, and was given an enhanced sentence as a career offender. Shortly thereafter, he filed three separate petitions for writ of error *coram nobis* in the Circuit Court for Baltimore City, challenging the validity of his 1993, 2001, and 2002 guilty pleas on the basis that his pleas were not voluntary and that counsel had rendered ineffective assistance. The circuit court denied his petitions in three separate orders entered in 2010, and Mr. Rich appealed.

We stayed this case pending the Court of Appeals's decision in *State v. Smith*, 443 Md. 572 (2015). With the benefit of *Smith*, a case fundamentally similar to this one, we hold that Mr. Rich did not waive his right to seek *coram nobis* relief, and we address the merits. On the merits, we affirm the court's decisions with respect to the 1993 and 2002 petitions, but vacate the court's decision as to his 2001 plea to conspiracy to distribute marijuana because we are unable to see in the transcript of that plea hearing where Mr. Rich was advised about the nature of the conspiracy charge, and we remand for further proceedings.

## I.    BACKGROUND

In January 2009, Mr. Rich pled guilty in the United States District Court for the District of Maryland to a charge of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. As a result of his previous convictions in the Circuit Court for Baltimore

City, he was given an enhanced sentence of 188 months as a "Career Offender."[1]  In April

2009, Mr. Rich filed three separate petitions for writ of error *coram nobis*, each challenging

the validity of a guilty plea he entered in a previous prosecution in the Circuit Court for

Baltimore City.

*First*, in 1993, Mr. Rich pled guilty to possession with intent to distribute a

controlled substance.  He was sentenced to a term of five years' imprisonment with five

---

[1] United States Sentencing Guidelines ("USSG") § 4B1.1 defines a "career offender" as follows:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The Guidelines go on to define a "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that: "(1) has an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a).  Part (b) of that section defines a "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

2

years suspended, and placed on probation for a year and six months. No transcripts of this plea hearing are in the record, so we do not know the facts and circumstances surrounding it.[2] We do know, however, that before Mr. Rich's term of probation ended, the circuit court determined that Mr. Rich had violated probation, and in 1995 he was sentenced to serve three years and six months. It appears as well that Mr. Rich filed a motion for modification of his sentence on January 4, 1994, but did not seek leave to appeal the guilty plea. He since has completed his sentence.

*Second*, on October 23, 2001, Mr. Rich pled guilty to possession with intent to distribute marijuana and conspiracy to distribute marijuana. The statement of facts placed on the record at the plea hearing indicated that a reliable source tipped off police that three men were selling marijuana on the steps of a row house in the 800 block of Collington Avenue, and storing marijuana in a vacant home on the same street. Based on this tip, police at the scene observed three men, later identified as Kenneth Cook, Calvin Armistead, and Mr. Rich, selling marijuana:

> During the course of their observations, the officers observed approximately eight times where persons would hand United States currency to both Mr. Cook and Mr. Rich. The money would be collected on every occasion, and on every occasion, Mr. Cook and Mr. Rich would respond northbound from their location to a house which was later found to be 825 North Collington Avenue, a vacant house. Both were observed to reach into the front window of the house and respond back to the location of the person who would surrender currency to them. Mr. Cook and Mr. Rich were observed to hand unknown

---

[2] Mr. Rich requested the transcript of his 1993 guilty plea proceeding more than fifteen years after it took place, and it was no longer available from Baltimore City Court Reporter's Office.

3

objects to these persons, who would accept the objects and walk out of the area.

\* \* \*

Officer John, along with Officer Norline, responded to the vacant house at 825 North Collington Avenue. Upon looking in the front window, on the floor approximately one foot beneath the window was a large, open plastic bag that contained 43 small ziplock bags that contained a plant-like substance, suspected marijuana. Next to that bag was a large ziplock bag containing five smaller sandwich baggies each containing approximately one ounce of suspected marijuana, for a total of five ounces. Next to that bag was a blue Gap bag that contained a brown paper bag that contained 67 small ziplock baggies of suspected marijuana.

On the possession count, Mr. Rich was sentenced to three years, all suspended, and placed on three years of supervised probation. On the conspiracy count, he was sentenced concurrently to three years, all suspended, and three years of supervised probation. Again, Mr. Rich did not move for leave to appeal the conviction, and he has completed this sentence.

*Third*, on April 19, 2002, Mr. Rich pled guilty to second-degree assault and was sentenced to ten months of incarceration. The circumstances surrounding this charge, as placed on the record during the plea hearing, indicate that:

. . . On November 2nd, 2001, at 2100 Guilford Avenue, which is Parole and Probation, officers attempted to serve a parole retake warrant on the defendant standing to the left of defense counsel. The defendant became hostile, pushed and punched both Officer Teal and Sergeant Freeman, causing cuts and bruises. The defendant then escaped from the officers and jumped out a window. The defendant was arrested at a later date . . . .

4

Mr. Rich was sentenced to ten months' imprisonment, which he served without seeking leave to appeal.

In his April 2009 *coram nobis* petitions, Mr. Rich argued that he was entitled to relief because trial counsel had rendered ineffective assistance at all three plea hearings. He contends that his counsel failed to ensure that his guilty pleas were knowing and voluntary, failed to ensure that the court engaged in a full plea colloquy, and failed to seek leave to appeal or ask for a modification of sentence following all three convictions, even though Mr. Rich says he asked counsel to do so. As for the "significant collateral consequence" required to qualify for *coram nobis* relief, Mr. Rich argued that he received an enhanced federal sentence in 2009 as a result of the three guilty pleas. Without holding a hearing on the matter, the circuit court denied all three petitions, and Mr. Rich filed a timely appeal.

The case was originally docketed in our September 2010 term. On October 27, 2014, though, we issued a stay pending the Court of Appeals's decision in *Graves v. State,* which presented the question of whether the failure to seek appeal in a criminal case may be construed as a waiver of the right to file a petition for *coram nobis* relief. 215 Md. App. 339, 343 (2013), *cert. granted*, 437 Md. 637 (2014). In December 2014, the Court of Appeals dismissed *Graves* as moot, but the stay in Mr. Rich's case remained in place because, in the interim, the Court granted *certiorari* in *State v. Smith* to address the same issue. 439 Md. 327 (2014). After the Court decided *Smith* in July 2015, we lifted the stay and scheduled the case for argument in March 2016.

## II.      DISCUSSION

Unlike the circuit court, we have the benefit of significant legislative and judicial developments in the governing law that post-date the orders at issue. So although we are, of course, reviewing the circuit court's denial of Mr. Rich's three petitions for *coram nobis* relief,[3] it is important for us to recognize the evolution, indeed the broadening, of *coram nobis* relief in the intervening six-and-a-half years, at least for certain categories of petitioners. *Coram nobis* remains an "extraordinary remedy" that allows a convicted defendant to "show that a criminal conviction was invalid under circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier." *State v. Smith*, 443 Md. 572, 597 (2015) (quoting *Skok v. State*, 361 Md. 52, 72-73 (2000)). This relief is available to aid defendants who, facing a relatively light sanction, "forego an appeal even if errors of a constitutional or fundamental nature may have occurred" and "[t]hen, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation . . .," find it is too late to seek post-conviction relief. *Skok*, 361 Md. at 77 (citing *United States v. Morgan*, 346 U.S. 502 (1954)). *Skok* recognized enhanced sentencing as one such collateral consequence. *Id.*

---

[3] Mr. Rich framed the questions as follows in his brief:

> 1. Did Appellant knowingly and voluntarily enter guilty plea[s]?
>
> 2. Did Appellant receive ineffective assistance of counsel during guilty plea proceedings?

6

Mr. Rich claims (and the circuit court assumed as to all three guilty pleas) that he suffered collateral consequences in the form of an enhanced federal sentence. That all said, he is eligible for *coram nobis* relief only if: (1) he is challenging his convictions based on constitutional, jurisdictional, or fundamental grounds, whether factual or legal; (2) he can rebut the presumption of regularity that attaches to each criminal case; (3) he faces significant collateral consequences from the convictions; (4) the alleged error has not been waived or finally litigated in a prior proceeding, absent intervening changes in the applicable law; and (5) he is not entitled to another statutory or common law remedy. *Jones v. State*, 445 Md. 324, 338 (2015).

The State's brief, filed before the case was stayed and thus before *Smith*, argues primarily that Mr. Rich waived his *coram nobis* claims and, if not, that they are barred by the equitable doctrine of laches. Those arguments were stronger before *Smith*, but in light of *Smith*, we disagree that the claims are barred. From there, we reach the merits, and we find that Mr. Rich has met most of his threshold burdens as to one of his guilty pleas, and one needs further exploration.

### A.    Mr. Rich Has Not Waived His *Coram Nobis* Claims.

The State argues *first* that Mr. Rich was not entitled to *coram nobis* relief because he waived any challenge to his guilty pleas by not seeking leave to appeal them or filing a petition for post-conviction relief. The Court of Appeals's most recent treatment of waiver in this context, however, compels us to reject these contentions.

In *Skok v. State*, the leading case on waiver at the time of the circuit court rulings and the parties' briefs, the Court of Appeals held that "the same body of law concerning

7

waiver and final litigation of an issue, which is applicable under the Maryland Post Conviction Procedure Act . . . shall be applicable in a coram nobis proceeding." 361 Md. at 79. But the General Assembly changed the law effective October 1, 2012, Md. Code (2001, 2008 Repl. Vol., 2015 Supp.), and § 8-401 of the Criminal Procedure Article ("CP") now provides that "the failure to seek an appeal in a criminal case may *not* be construed as a waiver of the right to file a petition for writ of error coram nobis." (emphasis added). Then, in *Smith*, the Court of Appeals held that § 8-401 applied retroactively to all *coram nobis* cases pending in court on the day the statute became effective. 443 Md. at 591. This timing works for Mr. Rich: he filed his *coram nobis* petitions in April 2009, the circuit court issued orders denying all three in February 2010, his appeal from those orders was timely, and, because of the stay, they remained pending on October 1, 2012. Therefore, his claims are not waived despite his failure to appeal from the judgments entered as a result of his guilty pleas.

We disagree as well that Mr. Rich waived his *coram nobis* claims by failing to withdraw his guilty plea or seek post-conviction relief. Although the Maryland Post Conviction Procedure Act would seem to support the State's contention,[4] it is enough under

---

[4] When a petitioner could have made an allegation of error [in an application for leave to appeal a guilty plea or in a habeas corpus petition] but did not make an allegation of error, *there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation*.

CP § 7-106(b)(2) (emphasis added).

8

*Smith* that the record is silent as to whether Mr. Rich actually knew post-conviction relief was available, and thus was able to decline intelligently to pursue it:

> We would eviscerate the beneficent purpose of [CP § 8-401] if we were to hold that a person, suddenly faced with the serious collateral consequence of removal from this country, and with sound reasons for the failure to seek relief earlier, is foreclosed even from *seeking* the extraordinary relief afforded by the common law remedy of coram nobis simply by having failed to pursue an earlier-available avenue of relief, the opportunity for which closed before the reason for seeking such relief became manifest.

443 Md. at 609 (internal citations omitted).

### B. Mr. Rich's Claims Are Not Barred By Laches.

The State argues *next* that Mr. Rich's claims are barred by the equitable doctrine of laches. Laches is both an affirmative defense and an equitable defense, *State Center, LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 480 (2014), so the State bears the burden of proving "by a preponderance of the evidence that: (1) there was an unreasonable or impermissible delay in asserting a particular claim, and (2) that the delay prejudiced the State." *Jones v. State*, 445 Md. 324, 339 (2015) (internal quotations and citations omitted). We find that the State has not met its burden here.

In order to demonstrate prejudice, the State must demonstrate that the delay in bringing the claim placed it in a less favorable position to defend against the claim and to re-prosecute the defendant. *Id.* at 357. In *Jones*, the State was able to meet its burden by eliciting testimony from a police officer during the hearing on a *coram nobis* petition challenging a defendant's prior drug conviction. *Id.* at 360. The officer was the only eyewitness, and had prepared the defendant's statement of charges and offense report

9

thirteen years earlier. But at the time of the hearing, the officer had no independent recollection of the defendant, nor could he locate the petitioner's case file. *Id.* The Court held that the prejudice to the State resulting from the delay was enough for the doctrine of laches to bar the petition.

In Mr. Rich's case, no *coram nobis* hearing was ever held, and because the State never pled or attempted to prove a laches defense in the circuit court, the court made no findings regarding any prejudice resulting from the delay in filing his petitions for relief. In its brief to this Court, the State assumes that the police officers and other witnesses would be unable to recall the circumstances surrounding Mr. Rich's drug-related offenses stretching back sixteen years. That may be true, but the record contains no evidence on which we could ground such a finding or the next-step conclusions that Mr. Rich's delay in seeking *coram nobis* relief prejudiced the State's ability to defend against the *coram nobis* petition or re-prosecute Mr. Rich. To adopt the State's position on this record would, in essence, be to hold that the passage of time, without more, satisfies these prejudice requirements, a leap we decline to take.

**C. Mr. Rich Is Entitled To A Remand With Regard To His 2001 Guilty Plea.**

On the merits of his *coram nobis* petition, Mr. Rich bore the burden to bring a valid constitutional challenge to each proceeding, to rebut the presumption of regularity that attaches to criminal cases, and to demonstrate that he faces significant collateral consequences from his convictions. *Jones*, 445 Md. at 338. Mr. Rich brings two interrelated constitutional challenges to each of his 1993, 2001, and 2002 pleas: *first*, that

10

the pleas themselves were involuntary, and *second,* that trial counsel rendered ineffective assistance by allowing him to enter involuntary guilty pleas and by failing to ensure that the court engaged in a full plea colloquy at each hearing.[5]

A guilty plea is not voluntary unless it "constitute[s] an intelligent admission that [the defendant] committed the offense," and the defendant received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976); *see also State v. Daughtry*, 419 Md. 35, 48 (2011). For that reason, Rule 4-242(c) directs a court not to accept a guilty plea until the defendant has been examined on the record and the court determines that the defendant understands both the nature of the charge and the consequences of the plea, and that a factual basis for the plea exists. Whether the plea passes muster under Rule 4-242(c) must be decided on a case-by-case basis, taking into account "the complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the

---

[5] We can dispose quickly of Mr. Rich's additional constitutional challenge that counsel had rendered ineffective assistance by failing to perfect an appeal or file a motion for modification of sentence after each of his three convictions. In its orders denying Mr. Rich's requests for *coram nobis* relief, the court pointed out that counsel *had* filed a motion for modification of sentence after Mr. Rich's 1993 conviction. It also noted that Mr. Rich did not provide any evidence that he'd asked counsel to file a motion to modify his sentence after the 2001 and 2002 convictions, or an application for leave to appeal after all three convictions. He likewise fails to provide any evidence of these allegations on appeal, and we will not find that his counsel rendered ineffective assistance on a silent record. *See Matthews v. State*, 161 Md. App. 248, 249 (2005) (concluding that a defendant is entitled to file a belated appeal or a belated motion for modification of sentence if he can show the court that he asked his attorney to take these actions but his attorney failed to do so).

court's acceptance of the plea." *Daughtry*, 419 Md. at 72 (quoting *State v. Priet*, 289 Md. 267, 277 (1981)).

"Our jurisprudence, in determining the validity of a guilty plea, has focused always on whether the defendant, based on the totality of the circumstances, entered the plea knowingly and voluntarily." *Id.* at 69. And although the complex nature of some crimes may require an explanation of each element of each charge, no specific litany is uniformly required. *Id.* at 72 n.19. In some cases, the nature of the crime may be readily apparent from the crime itself; in others, the factual basis proffered to support the plea may describe the offense in sufficient detail to pass muster under Rule 4-242(c). *Id.* at 72-73. The personal characteristics of the accused also play a role in the analysis, since a defendant with "diminished mental capacity is less likely to be able to understand the nature of the charges against him than one with normal mental faculties." *Id.* at 73.

In *Daughtry*, the Court of Appeals vacated a defendant's guilty plea, holding that it was deficient under Rule 4-242(c) when the only portion of the plea colloquy dedicated to ascertaining whether the plea was knowing and voluntary was the trial judge's question, "Have you talked over your plea with your lawyer?" (the defendant responded affirmatively). *Id.* at 70. Under the totality of the circumstances, it was not clear whether the defendant understood the nature of the charges to which he pled guilty in addition to the terms of the plea itself, *id.* at 70, so the Court held that "where the record reflects nothing more than the fact that a defendant is represented by counsel (as in the present case) and that the defendant discussed generically the plea with his or her attorney, such a plea colloquy is deficient under Rule 4-242(c), and the plea must be vacated." *Id.* at 71.

12

*Smith* clarified that when a defendant brings a *coram nobis* petition attacking the constitutionality of a guilty plea in trial court, the ultimate issue for the appellate court is whether the defendant understood the nature of the charges, regardless of what the trial court could determine from the record before it. 443 Md. at 653. And to that end, testimony from counsel indicating that he or she advised the defendant of the nature of the charges is admissible in order to determine whether the defendant plead guilty voluntarily, and with an understanding of the nature of the charge. *Id.* at 654.

In addition, the Sixth Amendment and Article 21 of the Maryland Declaration of Rights entitle a defendant to effective assistance of counsel. *Taylor v. State*, 428 Md. 386, 399 (2012). Under the test announced by the Supreme Court in *Strickland v. Washington*, a defendant who claims that he has received ineffective assistance must show *first* that counsel's performance was deficient, and *second* that the defective performance prejudiced the defense. 466 U.S. 668, 687 (1984). In other words, the defendant has the burden of proving that counsel made errors so serious as to deny the assistance guaranteed by the Sixth Amendment. *Taylor*, 428 Md. at 399. "In regard to the first, 'performance' prong of *Strickland*, the defendant must demonstrate that counsel's alleged acts or omissions, based on 'the facts of the particular case, viewed as of the time of counsel's conduct,' fell 'outside the wide range of professionally competent assistance.'" *See id.* (quoting *Strickland*, 466 U.S. at 690).

Whether Mr. Rich's counsel rendered ineffective assistance is a mixed question of law and fact, and we will not disturb the circuit court's factual findings unless they are clearly erroneous. We will, however, exercise our own independent judgment as to the

13

reasonableness of counsel's conduct and any prejudice that resulted.  *State v. Prado*, No. 100, Sept. Term 2015, slip op. at 15-16 (filed July 11, 2016).  On this point, Mr. Rich argues that counsel failed to ensure that there was an adequate on-the-record explanation of the nature of the charges he faced, and that as a result, his guilty pleas were not voluntary, knowing, or intelligently made.

We evaluate each of Mr. Rich's plea agreements against this legal backdrop. Ultimately, and as we explain, Mr. Rich doesn't state a valid constitutional challenge as to his 1993 and 2002 guilty pleas and his *coram nobis* petitions for those pleas must fail.  His 2001 guilty plea is a different story, at least in part.

### 1. The 1993 and 2002 pleas were knowing and voluntary.

The absence of a hearing transcript for the 1993 plea proceedings prevents Mr. Rich from meeting his burden to prove that his plea was deficient.  A presumption of regularity attaches to criminal proceedings, which means that we "presume[] that the trial court proceedings were correct and the burden rests on the challenger to show otherwise." *Harris v. State*, 406 Md. 115, 122 (2008) (quoting *Morgan*, 346 U.S. at 512).  Without a transcript, we cannot evaluate Mr. Rich's claims, and we decline to assume from the transcripts of his 2001 and 2002 guilty pleas that his 1993 plea fell short.  In the absence of any evidence to the contrary, the presumption of regularity stands unrebutted, and compels us to conclude that the 1993 guilty plea was intelligently and voluntarily entered, and that his counsel's performance did not rise to the level of ineffective assistance. *Jones*, 445 Md. at 338; *Jones v. State*, 114 Md. App. 471, 479 (1997).

In 2002, Mr. Rich pled guilty to a charge of second-degree assault against a police

officer. The plea hearing featured the following colloquy:

> THE COURT: So you're 27 years old. How far did you go in school?
>
> MR. RICH: I got my diploma.
>
> THE COURT: So you can read and write the English language without any difficulty?
>
> MR. RICH: Yes.
>
> THE COURT: Are you today under the influence of any drugs, alcohol, or anything that affects your ability to understand what you're doing?
>
> MR. RICH: No, sir.
>
> THE COURT: Have you ever been treated by a psychiatrist or a psychologist for any type of mental disorder related to your not understanding what was going on around you?
>
> MR. RICH: No, sir.
>
> *     *     *
>
> THE COURT: . . . the only other question would be on the voluntariness of your plea. Now, I ask you, aside from plea negotiations in this case, has anyone offered you anything, forced you in any way to plead guilty in this way?
>
> MR. RICH: No.
>
> THE COURT: Then, I am satisfied that you understand what you're doing here today and that you are tendering a free and voluntary plea.

We are satisfied that this plea colloquy complies with Rule 4-242, and that Mr.

Rich's guilty plea was entered knowingly and voluntarily. The court's inquiry into his

mental state and level of education—what *Daughtry* termed "the personal characteristics of the accused"—demonstrates that Mr. Rich understood what was going on around him and was capable of grasping the nature of the charges. 419 Md. at 72. And although Mr. Rich is right to point out that the court did not spell out the elements of the assault charge, this failure doesn't undermine the validity of this guilty plea. Assault is not a complex crime, and Mr. Rich was capable of understanding the nature of the charge from the statement of facts, in which the prosecutor explained that Mr. Rich was being charged because he had punched and pushed two police officers. *See id.* (finding that the "factual basis to support the court's acceptance of the plea may describe the offenses charged in sufficient detail to pass muster under the Rule." (internal citations omitted)).

Nor does this Court's decision in *State v. Hicks*, 139 Md. App. 1 (2001), compel us to find the 2002 plea colloquy deficient. There, we held that evidence that the defendant was not advised on the burden of proof, the standard of proof, or the presumption of innocence was sufficient to support the circuit court's finding that the defendant's guilty plea was not knowing or voluntary. *Id.* at 11. In Mr. Rich's hearing, by contrast, the court informed him that by pleading guilty he would forego a trial at which the State would be required to prove his guilt beyond a reasonable doubt. Viewed in its entirety, the 2002 plea colloquy satisfies us that Mr. Rich understood the charges against him and that he was giving up his right to force the State to prove him guilty beyond a reasonable doubt. *See Daughtry*, 419 Md. at 69 (the court must decide from the defendant's perspective whether he understood the charges). For the same reason, we disagree that Mr. Rich's counsel was

16

ineffective, and because he has failed to bring a valid constitutional challenge to either conviction, his *coram nobis* claims for both of these pleas fail.

> **2.** **Mr. Rich's 2001 guilty plea to conspiracy to distribute marijuana was not knowing and voluntary.**

In 2001, Mr. Rich pled guilty to two counts, possession with intent to distribute marijuana, and conspiracy to distribute marijuana. But the portion of the plea proceedings relevant to determining whether Mr. Rich's plea was knowing and voluntary discussed only the possession with intent to distribute charge:

> [CO-DEFENDANT'S COUNSEL]: The fourth ground has a couple parts. One is whether or not you understand the charge. Mr. Thomas and Mr. Rich, you're both pleading guilty to possession kind of offenses and possession can be either actual possession, meaning it's on a part of you—in your pockets, holding it in your hand like a pen—or constructive possession, meaning that's in the vicinity of where you are, and you are exercising dominion, meaning ownership, and control over it, meaning that if somebody tried to take it, you could stop them, such as my briefcase over on one of the chairs. I'm not touching it in any way, but I'm in constructive possession of that.
>
> Possessing it with the intent to distribute it means you're having the intent to transfer that possession from you to somebody else. That could be giving it away, it could be selling it, as long as the possession transfers. There doesn't have to be any money involved. A gift is a transfer of possession. So that's the possessing it with the intent to give it to somebody else, as opposed to us[ing] it all for yourself.
>
> *     *     *
>
> Mr. Rich, you understand you're charged with marijuana and that's another one of those substances that the Legislature says you can't have?
>
> MR. RICH: Yes.

17

[CO-DEFENDANT'S COUNSEL]: Is there anything about the charge of possessing it with the intent to distribute that you don't understand?

MR. RICH: No.

[CO-DEFENDANT'S COUNSEL]: Okay. The other part of this fourth ground is whether or not you're doing this of your own free will and volition. Now, the Court is allowed to tell you ahead of time what sentence you're going to get, but no one can make any other promises.

* * *

Mr. Rich, has anyone promised you anything except the sentence?

MR. RICH: No.

[CO-DEFENDANT'S COUNSEL]: Has anyone threatened you or coerced you in any way?

MR. RICH: No.

[CO-DEFENDANT'S COUNSEL]: In other words, you're doing this of your own free will and volition? This is what you want to do?

MR. RICH: Yes.

The court then found on the record that Mr. Rich entered a knowing and voluntary guilty plea to both counts.

Mr. Rich contends that this plea colloquy is deficient because the court did not establish on the record the elements of the second count, conspiracy to distribute marijuana. On this point, the circuit court found that it wasn't necessary to disclose the specific elements of each charge on the record, and that the statement of facts offered by the

18

prosecutor, describing Mr. Rich working together with Mr. Thomas and Mr. Armistead to sell marijuana, was sufficient to communicate the nature of a conspiracy charge.

We disagree. Again, our first task is to determine whether, under the totality of the circumstances, Mr. Rich understood the nature of the conspiracy charge. The circuit court was correct when it found that as a general matter, the court is not required to go through the "specific litany" of explaining each element of the crimes charged. *Daughtry*, 419 Md. at 72 n.19. But the record must reflect that Mr. Rich understood the essential nature of the crime of conspiracy, that is, "the agreement between two or more people to achieve some unlawful purpose or to employ unlawful means in achieving a lawful purpose." *State v. Payne*, 440 Md. 680, 712 (2014) (quoting *State v. Johnson*, 367 Md. 418, 424 (2002)). And unlike the situation in *Smith*, the circuit court decided Mr. Rich's *coram nobis* petitions without a hearing, so there is no testimony apart from the plea hearing itself from which we can evaluate Mr. Rich's understanding of the charges.

This plea colloquy didn't explain to Mr. Rich the essential nature of a conspiracy, *i.e.*, an agreement to achieve an unlawful purpose. And we disagree that the essential nature of the charge was self-evident, or even that it was communicated by the prosecutor's factual proffer describing Mr. Rich working with two other men to sell marijuana. Indeed, the colloquial use of "conspiracy" may evoke a much larger-scale plot than its legal definition; therefore, we cannot assume that Mr. Rich understood the essential nature of the conspiracy charge to which he was pleading guilty without any explanation from the court. *See Smith*, 443 Md. at 619 (Barbera, C. J., concurring) (counting conspiracy as among those crimes that are not readily understandable from the label of the crime itself);

19

*Daughtry*, 419 Md. at 72 (explaining that the complex nature of some crimes demands some additional explanation beyond simply pronouncing its name).

Under the circumstances, Mr. Rich has met his burdens to show a constitutional deficiency in his 2001 guilty plea, and to rebut the presumption of regularity with regard to that guilty plea.[6] We already have decided that he hasn't waived his claim for *coram nobis* relief, and there does not appear to be any other form of legal or equitable relief available to him. This leaves, then, the question of whether he faces significant collateral consequences from the convictions, and the record on this point is muddled. *See Jones*, 445 Md. at 338 The circuit court did not address the question—it assumed, without deciding, that its "ruling…will have a collateral impact [on his] federal sentence," then addressed the merits. Mr. Rich alleges that his 2001 plea, together with his 1993 plea, form the basis for his enhanced federal sentence.[7] *See Skok*, 361 Md. at 77 (recidivist sentencing can present serious collateral consequences for defendants with prior convictions). But the State disputes the collateral impact of these convictions as a factual matter—it contends that Mr.

---

[6] The State did not ask for a remand on this point or proffer evidence it would have put on at a hearing, had there been one, but argued in its brief that we should infer Mr. Rich's understanding of the charges from his acknowledgement that counsel "help[ed] him understand what the trial would be all about and guide[ed] [him] in coming to th[e] decision" to plead guilty.

[7] It appears that Mr. Rich's 2002 plea for second-degree assault does not form the basis for an enhanced sentence, because it is not a crime of violence under USSG § 4B1.2(a). *See United States v. Royal*, 731 F.3d 333, 342 (4th Cir. 2013) (finding that because "Maryland's second-degree assault statute reaches any unlawful touching, whether violent or nonviolent and no matter how slight, 'convictions under the statute . . . cannot categorically be crimes of violence[,]'" and that a second degree assault conviction "does not constitute a predicate 'violent felony' supporting a sentencing enhancement . . . .").

20

Rich stipulated to "Career Offender Status" when he entered his federal guilty plea. Whether, and to what extent, Mr. Rich's 2001 guilty plea in fact caused his federal sentence to be enhanced and, if it did, whether that impact qualifies as a collateral consequence justifying *coram nobis* relief are questions the circuit court should resolve in the first instance. Accordingly, we vacate the portion of the judgment denying his *coram nobis* petition as to the 2001 plea and remand for further proceedings, *see* Md. Rule 15-1206, but otherwise affirm.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**